## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVSION

| | | |
|---|---|---|
| RAMON SOTO and CHARLENE MORRIS, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:25-cv-00405 |
| | ) | |
| Plaintiffs, | ) ) | CLASS ACTION COMPLAINT |
| | ) | JURY TRIAL DEMANDED |
| v. | ) ) | |
| | ) | |
| PIM BRANDS, INC., | ) ) | |
| | ) | |
| Defendant. | ) ) | |

Plaintiffs Ramon Soto and Charlene Morris, on behalf of themselves and all others similarly situated ("Plaintiffs"), by and through their attorneys, state for their Complaint against Defendant PIM Brands, Inc. ("Defendant"), as follows:

## NATURE OF THE ACTION

1.      This action seeks to redress Defendant's false and misleading marketing campaign for its "Fruit 'n Yogurt" product line ("the Product") which deceptively suggests that their *Fruit 'n Yogurt Snacks* are made with yogurt (in some form), when they are not.  Rather, the Product is covered in a candy-like coating designed to provide the illusion of health while delivering the harms of an ultra-processed food.

2.      Defendant's product packaging prominently features the product name (*Fruit 'n Yogurt Snacks*) together with images of different varieties of fresh fruit being covered in a creamy yogurt dip, the visual impact of which is reinforced by the words "real fruit surrounded by creamy yogurt."  The front of *Fruit 'n Yogurt Snacks* packages, which come in three fruit flavors, is shown here:






3.     The name of the Product and the phrase "Surrounded by Creamy Yogurt" would be interpreted by any reasonable consumer as representations that *Fruit 'n Yogurt Snacks* are made with yogurt (in some form), as well as real fruit, and are healthy to consume. Yogurt is widely

2

understood to be a healthy and nutritious product containing calcium, protein, phosphorus and B Vitamins, as well as bacteria that is beneficial to the gut biome.[1]

4. The ingredient lists on the packaging for all three varieties of *Fruit 'n Yogurt Snacks* represent that the products contain what Defendant misleadingly calls a "yogurt coating." The "yogurt coating" is made from sugar, palm kernel oil, whey powder, nonfat milk powder, yogurt powder (cultured whey and nonfat milk), titanium dioxide, soy lecithin, vanilla, palm oil, coconut oil, carnauba wax, confectioner's glaze (lac-resin), tri-calcium phosphate, ascorbic acid (Vitamin C), Vitamin A palmitate, and Vitamin D3. A representative ingredient list from the Blueberry-Acai variety is copied below:

Fruit Center (grape, pear, blueberry and acai), sugar, corn syrup, modified corn starch and/or rice flour, pectin, citric acid, sodium citrate, natural flavor, fruit and vegetable juice (color), spirulina extract (color), **yogurt coating** sugar, palm kernel oil, whey powder, nonfat milk powder, yogurt powder (cultured whey and nonfat milk), titanium dioxide, soy lecithin, vanilla, palm oil, coconut oil, carnauba wax, confectioner's glaze (lac-resin), tri-calcium phosphate, ascorbic acid (vitamin C), vitamin A palmitate, vitamin D3.

5. None of the components of the so-called "yogurt coating," including the so-called "yogurt powder," contains or is derived from "yogurt" either as yogurt is defined in the federal regulations or as consumers commonly understand the term. Rather, the "yogurt coating" contains several ingredients known to be unhealthy for people to consume in their ultra-processed form, including palm kernel oil, palm oil, titanium dioxide, carnauba wax (as used to polish cars), spirulina extract, and sodium citrate.

6. Essentially, in a visual and semantic sleight of hand, Defendant substitutes an unhealthy ultra-processed candy-like coating for a coating made from yogurt.

---

[1] Harvard T.H. Chan School of Public Health, *Yogurt* (Nov. 2019), https://www.hsph.harvard.edu/nutritionsource/food-features/yogurt/ (last visited Jan. 14, 2025).

7.    More evidence is emerging every day that diets rich in ultra-processed foods are associated with "increased risks for premature death, cardiovascular disease, mental health disorders, diabetes, obesity, and sleep problems."[2]

8.    Consumers, like Plaintiffs, who purchased Defendant's *Fruit 'n Yogurt Snacks* have been deceived by Defendant's false and misleading claims that this product contains yogurt (in some form), when it does not, and is healthy to consume, when it is not, and are entitled to redress through this action for Defendant's deceptive conduct.

9.    Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Product does not contain yogurt (in any form).

10.    Plaintiffs and Class Members relied on Defendant's misrepresentations and omissions of what is in the Product when they purchased it.

11.    Consequently, Plaintiffs and Class Members lost the entire benefit of their bargain when what they received was a food product that does not contain yogurt (in any form).

12.    Alternatively, Plaintiffs and Class Members paid a price premium for the Product based upon Defendant's marketing and advertising campaign, including its false and misleading representations and omission on the Product's labels. Given that Plaintiffs and Class Members paid a premium for the Product, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

13.    Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 502/1 *et seq*., and New York General Business Law §§ 349 and 350.

---

[2] Heidi Goodman, *More evidence that ultra-processed foods harm health* (June 1, 2024), https://www.health.harvard.edu/nutrition/more-evidence-that-ultra-processed-foods-harm-health (last visited Jan. 14, 2025).

14. Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

## THE PARTIES

15. Plaintiff Ramon Soto is an individual who resides in Chicago, Illinois.

16. Plaintiff Charlene Morris is an individual who resides in Rochester, New York.

17. Defendant PIM Brands, Inc., is a Delaware corporation with its principal place of business in New Jersey.

18. Defendant markets, sells, and distributes various fruit-based juices and food products, including *Fruit 'n Yogurt Snacks.*

19. Defendant markets, sells, and distributes *Fruit 'n Yogurt Snacks* in New York, Illinois and throughout the United States, including, but not limited to, through mass retailers such as Stop & Shop and Target, as well as on-line retailers such as Amazon, and through vending machines.

20. Defendant is responsible for the marketing, advertising, labeling, and packaging of the *Fruit 'n Yogurt Snacks.*

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiffs and Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

22. This Court may exercise jurisdiction over the Defendant because it has sufficient minimum contacts in Illinois and purposely avails itself of the markets within Illinois through the

promotion, sale, marketing, and distribution of their products, thus rendering jurisdiction by this Court proper and necessary.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## FACTUAL BACKGROUND

I.    **Defendant Markets *Fruit 'n Yogurt Snacks* as Healthy and as Containing Yogurt, When, in Fact, None of the Ingredients Are Made From Yogurt and Are Instead Ultra-Processed**

24.    Consumers increasingly are becoming aware of the benefits of living a healthy lifestyle, including eating nutritious foods.

25.    Yogurt, which has been made and consumed by humans for thousands of years, is made when heated milk is combined with two specific types of bacteria -- *Lactobacillus bulgaricus* and *Streptococcus thermophilus* -- resulting in a thick, creamy product.[3]  Yogurt is a rich source of calcium and protein.  Regular consumption of yogurt is associated with reduced risk of obesity

---

[3] Harvard T.H. Chan School of Public Health, *Yogurt* (Nov. 2019), https://www.hsph.harvard.edu/nutritionsource/food-features/yogurt/ (last visited Jan. 14, 2025) (citing the studies linked below in footnotes 5 through 7).

and chronic diseases,[4] and may protect against heart disease[5] and Type II diabetes.[6] These health benefits of yogurt, as well as its nutritional value, are widely known to consumers and drive consumer decision-making. Indeed, "[o]ver the last 50 years, yogurt has shifted from being perceived as a specialty health food item to being a beloved mainstream staple in America."[7]

26. Regrettably, Defendant can lay no legitimate claim as to these properties benefiting its consumers, as its *Fruit 'n Yogurt Snacks* do not contain yogurt (in any form) and none of its ingredients are derived from yogurt at all.

27. Rather, the Product contains what Defendant misleadingly describes as a "yogurt coating," which is, essentially, a vanilla-flavored candy-like coating whose primary ingredient is sugar.[8] While a so-called "yogurt powder" appears as a secondary ingredient of the "yogurt

---

[4] Dariush Mozaffarian, et al., *Changes in Diet and Lifestyle and Long-Term Weight Gain in Women and Men,* 364 N Engl J Med. 2392-2404 (2011), https://www.nejm.org/doi/10.1056/NEJMoa1014296?url_ver=Z39.88-2003&rfr_id=ori:rid:crossref.org&rfr_dat=cr_pub%20%200www.ncbi.nlm.nih.gov (last visited Jan. 14, 2025).

[5] Kerry L. Ivey, et al., *Association between yogurt, milk, and cheese consumption and common carotid artery intima-media thickness and cardiovascular disease risk factors in elderly women,* 94 Am J Clin Nutr. 234 (2011), https://www.sciencedirect.com/science/article/pii/S0002916523023353?via%3Dihub (last visited Jan. 14, 2025).

[6] Karen L. Margolis, et al., *A Diet High in Low-Fat Dairy Products Lowers Diabetes Risk in Postmenopausal Women,* 141 J Nutr. 1969 (2011), https://www.sciencedirect.com/science/article/pii/S0022316622031030?via%3Dihub (last visited Jan. 14, 2025).

[7] WebMD, *Health Benefits of Yogurt* (Feb. 14, 2023), https://www.webmd.com/diet/health-benefits-yogurt (last visited Jan. 14, 2025).

[8] Commercially available vanilla-flavored candy coatings contain similar ingredients. For example, Great Value Vanilla Flavored Candy Coating contains sugar, palm kernel oil, palm oil, nonfat dry milk, soy lecithin (an emulsifier), whole milk, natural flavors and vanilla extract. https://www.walmart.com/ip/Great-Value-Vanilla-Flavored-Candy-Coating-16-oz/967028108 (last visited Jan. 14, 2025)

coating" (after sugar, palm kernel oil, whey powder and nonfat milk powder), it is clearly present in such minute quantities as to have minimal (if any) nutritional value.[9]  Moreover, the "yogurt powder" is not derived from yogurt as defined by federal regulations or as reasonable consumers understand the term "yogurt" to mean.  Rather, the "yogurt powder" is made from a blend of "cultured whey and nonfat milk."[10]

28.     In fact, completely absent from the "yogurt coating"  - including the ingredients of the "yogurt powder" -- are any live active yogurt cultures known as *Lactobacillus delbrueckii* subsp. *bulgaricus* and *Streptococcus thermophilus* which are added to basic dairy ingredients (cream, milk, partially skimmed milk, skim milk or the reconstituted versions of those ingredients) to produce yogurt as that term is defined by federal regulations and as reasonable consumers understand the term "yogurt" to mean.  Nor was the skim milk of the so-called "yogurt powder" cultured by the addition of the prescribed lactic-acid producing bacteria.

29.     While optional dairy ingredients, including whey, may <u>also</u> be added to the basic dairy ingredients before culturing (*see* 21 C.F.R. §§ 131.200(a)-(d)), the regulations makes clear that the addition of the "characterizing bacterial culture" to the basic dairy ingredients is essential to producing yogurt.  Moreover, the so-called "yogurt powder" contains <u>cultured</u> whey, which the FDA does not permit as an "optional dairy ingredient" *(see* 86 Fed Reg. 31127 (June 11, 2021)).

_____

[9]  Megan Ware, *Everything you need to know about yogurt* (Jan 22, 2024), https://www.medicalnewstoday.com/articles/295714 (last visited Jan. 14, 2025).

[10] Whey, a dairy byproduct, can be cultured with the addition of different types of bacteria, and is used as a food ingredient and in animal feed. *See, e.g.,* Mezzoni Foods, *Cultured Whey*, https://www.mezzonifoods.com/buy-cultured-whey-all-natural-shelf-life-extension-cultured-milk/?gad_source=1&gclid=EAIaIQobChMI_O20xKaiiQMVzV1HAR2XYirbEAAYASAAEgJ_6_D_BwE (last visited Jan 14. 2025) (noting that "cultured whey is a natural preservative produced via a controlled fermentation of whey (milk) with *Propionibacterium freudenreichii*. This bacterium is best known for its role in the creation of Swiss Cheese.")

30.     In order to avoid misleading consumers, the FDA has cautioned that, when the term "yogurt" is used as part of a product name (as it is with *Fruit 'n Yogurt Snacks),* it *"*expects that yogurt, or a substance derived from yogurt (i.e., yogurt powder) is used as an ingredient in their manufacture. **The ingredient must be or be derived from yogurt that complies with § 131.200.**" (See 86 Fed. Reg. 31124 (June 11, 2021) (emphasis added)). As noted above, *Fruit 'n Yogurt Snacks* are not made from yogurt, nor are any of the components of the "yogurt coating" derived from yogurt as that term is defined by federal regulations, and as reasonable consumers understand the term "yogurt" to mean.

31.     Accordingly, Plaintiffs' claims that they were misled by Defendant to believe that the product contains yogurt in some form, when it does not, is not preempted by federal law because they plead state law causes of action that exist separately from the FDCA and its implementing regulations, but does not seek to impose requirements different from them. Stated otherwise, Plaintiffs are suing for conduct that violates FDA regulations, but is not seeking to enforce those FDA regulations. Rather, Plaintiff Ramon Soto is suing Defendant for conduct which violates Illinois' Consumer Fraud Act, and Plaintiff Charlene Morris is suing Defendant for conduct which violates New York's General Business Law §§ 349 and 350.

32.     An example of such a yogurt powder that derives from standardized yogurt – Birch and Meadow Yogurt Powder - is shown below. The ingredient list ("Nonfat Dry Milk, Live Culture") makes clear that it is derived from standardized yogurt.



33. Other yogurt-covered products, such as the Hayden Valley Foods product, Vanilla Yogurt Covered Pretzels, depicted below, contain dry nonfat yogurt (or yogurt powder) that is similarly derived from standardized yogurt. The ingredient list states that it contains a "Yogurt Flavored Confectionary Coating" made from "Dry Nonfat Yogurt (Cultured Skim Milk)," among other ingredients.



34.     Unlike the labels for the products identified in paragraphs 32-33, above, the product label for *Fruit n' Yogurt* snacks is misleading because it suggests to a reasonable consumer that the Product is made from yogurt (in some form), when it is not, and is healthy to consume, when it is not.  Indeed, as set forth above, not even the so-called "yogurt powder" is derived from yogurt, as yogurt is defined by the federal regulations, and as consumers commonly understand the term "yogurt" to mean.

35.     Instead, the product is covered in a vanilla-flavored candy-like coating that consists primarily of sugar and other unhealthy ultra-processed ingredients such as palm kernel oil which have been associated with cardiovascular disease and obesity.[11]

---

[11]  Euridice Martinez Steele, et al., *The burden of excessive saturated fatty acid intake attributed to ultra-processed food consumption: a study conducted with nationally representative cross-sectional studies from eight countries*, 10 J Nutr Sci. 10.1017 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8190718/ (last visited Jan. 14, 2025).

36.     A large review of studies on ultra-processed foods recently found that exposure to such foods was associated with thirty-two adverse health parameters "spanning mortality, cancer, and mental, respiratory, cardiovascular, gastrointestinal, and metabolic health outcomes."[12] Published in 2024, such studies "are valuable because they look at large groups of people – the 2024 review included results from nearly 10 million — over the many years it can take for chronic health conditions to develop."[13]

37.     Consumers are increasingly aware of the dangers of ultra-processed foods and are willing to pay a higher price for products that are considered healthier and more natural. Businesses, including Defendant, prominently promote their products as containing yogurt (in some form), when they do not, in order to capitalize on consumers' belief in the health and nutritional benefits of yogurt.

38.     Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they orally ingest and that they feed to their children and grandchildren.  Consumers such as Plaintiffs and the Class Members are influenced by the marketing and advertising campaign, the Product's labels, and the listed ingredients.

39.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

---

[12] Melissa M. Lane, et al., *Ultra-processed food exposure and adverse health outcomes: umbrella review of epidemiological meta-analyses*, 384 BMJ 10.1136 (2024).

[13] Alice Callahan, *How Bad Are Ultraprocessed Foods, Really?* (May 6, 2024), https://www.nytimes.com/2024/05/06/well/eat/ultraprocessed-foods-harmful-health.html (last visited Jan. 14, 2025).

40.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

41.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a Product marketed as being made from yogurt (in some form) over comparable products not so marketed.

42.     Consumers such as Plaintiffs and Class Members purchased and continued to purchase the Product in part because the Product packaging unequivocally conveys the message that it contains healthy yogurt. Plaintiffs and Class Members would have paid less for the Product, or they would not have purchased them at all, but for the misrepresentation that the Product contains yogurt (in some form). Therefore, Plaintiffs and Class Members have suffered a financial injury in the form of paying a price premium that the Product commands in the market as a result of Defendant's representation that the Product is covered in yogurt (in some form).

## II.     Plaintiffs Purchased the Products Relying on Defendant's Representations that the Products Were Healthy and Contained Yogurt

### Plaintiff Ramon Soto

43.     Plaintiff Ramon Soto is a regular consumer of *Fruit 'n Yogurt Snacks,* having purchased them at various retail stores in Chicago on many occasions over the last few years through and including 2024.

44.     Prior to purchasing *Fruit 'n Yogurt Snacks*, Plaintiff saw the product's packaging and, in particular, the name of the product (*Fruit 'n Yogurt Snacks*) and the representation that fruit is "surrounded by yogurt."

45.     Plaintiff purchased *Fruit 'n Yogurt Snacks* reasonably believing that Defendant's Product is made from yogurt (in some form).

46.     Plaintiff is aware of the health benefits of yogurt and reasonably believed he was purchasing a product that was a healthier snack to consume because it was made from yogurt (in some form).

47.     Had Plaintiff known that Defendant's *Fruit 'n Yogurt Snacks* are not made from yogurt (in any form), he would not have purchased Defendant's Product or, at the very least, would not have paid a price premium for Defendant's *Fruit 'n Yogurt Snacks.*

**Plaintiff Charlene Morris**

48.     Plaintiff Charlene Morris is a regular consumer of the mango and strawberry varieties of *Fruit 'n Yogurt Snacks,* often purchasing boxes from Wegman's, Walmart and Big Lots near her home in Rochester, New York for her two young grandsons.  Most recently, in or about May 2024, Plaintiff purchased the product from her local Big Lots.

49.     Prior to purchasing *Fruit 'n Yogurt Snacks*, Plaintiff saw the product's packaging and, in particular, the name of the product (*Fruit 'n Yogurt Snacks*) and the representation that fruit is "surrounded by yogurt."

50.     Plaintiff purchased *Fruit 'n Yogurt Snacks* reasonably believing that Defendant's Product is made from yogurt (in some form).

51.     Plaintiff is aware of the health benefits of yogurt and reasonably believed she was purchasing a product that was a healthier snack to consume because it was made from yogurt (in some form).

52.     Had Plaintiff known that Defendant's *Fruit 'n Yogurt Snacks* are not made from yogurt (in any form), she would not have purchased Defendant's Product or, at the very least, would not have paid a price premium for Defendant's *Fruit 'n Yogurt Snacks.*

## CLASS DEFINITION AND ALLEGATIONS

53. Plaintiff Ramon Soto brings this action on behalf of himself and all other similarly situated consumers in the State of Illinois pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class (the "Illinois Subclass"):

> All consumers who, within the applicable statute of limitations period, purchased *Fruit 'n Yogurt Snacks* in the State of Illinois (whether online or in-person) manufactured, marketed, distributed, and/or sold by Defendant which Defendant warranted as containing yogurt (the "Class Product"). Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers, and their immediate family members and associated court staff assigned to this case, and those who purchased Class Product for resale.

54. Plaintiff Charlene Morris brings this action on behalf of herself and all other similarly situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class (the "New York Subclass"):

> All consumers who, within the applicable statute of limitations period, purchased *Fruit 'n Yogurt Snacks* in the State of New York (whether online or in-person) manufactured, marketed, distributed, and/or sold by Defendant which Defendant warranted as containing yogurt (the "Class Product"). Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers, and their immediate family members and associated court staff assigned to this case, and those who purchased Class Product for resale.

55. Plaintiffs expressly disclaim any intent to seek any recovery in this action for personal injuries that they or any Class member may have suffered.

56. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Class contains thousands of purchasers of the Class Product who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs.

15

57. **Existence and Predominance of Common Questions of Law and Fact**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of the laws asserted;

- Whether Defendant labeled, packaged, advertised, marketed, and/or sold the Class Product with claims that it contained "yogurt" (in some form);

- Whether Defendant's labeling, packaging, advertising, marketing, and/or selling of the Class Product with claims that it contained "yogurt" (in some form) was and/or is false, fraudulent, deceptive, and/or misleading;

- Whether Plaintiffs and Class members have been injured and the proper measure of their losses as a result of those injuries; and

- Whether Plaintiffs and Class members are entitled to an award of compensatory/actual damages.

58. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Defendant's misrepresentations. Moreover, Plaintiffs' claims are typical of the Class members' claims. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

59. **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs purchased a Class Product, and they were harmed by Defendant's deceptive misrepresentations. Plaintiffs have therefore suffered an injury in fact as a result of Defendant's conduct, as did all Class members who purchased Class Product. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

60.    **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her.  Further, even if the Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

61.    Plaintiffs seeks monetary damages, including statutory damages on behalf of the entire Class.  Unless a Class is certified, Defendant will be allowed to profit from its deceptive practices, while Plaintiffs and the members of the Class will have suffered damages.

### As and for a First Cause of Action
### Violation of the Illinois Consumer Fraud Act
### (On Behalf of Plaintiff Soto and the Illinois Subclass)

62.    Plaintiff Soto realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

63.    Plaintiff brings this claim individually and on behalf of the Class.

64.    In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/1, *et seq*. ("the Act"), like the consumer fraud acts of numerous other states across

the nation, prohibits deceptive acts and practices in the sale of such Products as Defendant's *Fruit 'n Yogurt Snacks*.

65.     Plaintiff and the Class were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Class.

66.     Defendant does business in Illinois, sells and distributes its *Fruit 'n Yogurt Snacks* Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of its *Fruit 'n Yogurt Snacks* Products in Illinois and elsewhere in the United States.

67.     Defendant's Products purchased by Plaintiff and the Class were "consumer items" as that term is defined under the Act.

68.     Defendant misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its *Fruit 'n Yogurt Snacks* Products which has caused damage and injury to Plaintiff and the Class.

69.     Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

70.     Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff and the Illinois Subclass.

71.     Defendant intended Plaintiff and all Class members to rely on its representations that the Product contains and is derived from "yogurt" (in some form).

72.     The conduct of the Defendant constituted a consumer fraud under the Illinois Consumer Fraud Act and similar laws in other states.

### As and for a Second Cause of Action
**Violation of New York General Business Law Section 349**
**(On Behalf of Plaintiff Morris and the New York Subclass)**

73.     Plaintiff Morris realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

74.     New York General Business Law Section 349 prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

75.     By labeling, packaging, advertising, marketing, distributing, and/or selling each Class Product to Plaintiff and the other Class members with false and misleading claims that the Class Product contained or was derived from "yogurt" (in some form) as set forth above, Defendant engaged in, and continues to engage in, deceptive acts and practices.

76.     In taking these actions, Defendant failed to disclose material information about their products, which omissions were misleading in a material respect to consumers and resulted in the purchase of Defendant's products.

77.     Defendant has deceptively labeled, packaged, advertised, marketed, promoted, distributed, and sold the Class Product to consumers.

78.     Defendant's conduct was consumer oriented.

79.     Defendant engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

80.     Defendant's misrepresentations were misleading in a material respect because the Class Product does not contain "yogurt" and was not derived from "yogurt" (in any form).

81.     Defendant knew, or should have known, that by making the misrepresentations addressed herein, Plaintiff and other consumers would be misled into purchasing Class Product.

82.     Plaintiff and the Class members have been aggrieved by and have suffered losses as a result of Defendant's violations of Section 349 of the New York General Business Law. By

virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured by purchasing and/or overpaying for a product that is not what Defendant represents it to be.

83.     By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Defendant is liable to Plaintiff and members of the New York Subclass for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

84.     Defendant's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Defendant willfully and/or knowingly.  Accordingly, Plaintiff and members of the New York Subclass are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

**As and for a Third Cause of Action**
**Violation of New York General Business Law Section 350**
**(On Behalf of Plaintiff Morris and the New York Subclass)**

85.     Plaintiff Morris realleges and incorporates by reference the allegations in the paragraphs above as if fully set forth herein.

86.     Defendant's labeling, packaging, marketing, and advertising of the Class Product is "misleading in a material respect," as it fails to disclose to consumers material information in Defendant's sole possession and, thus, is "false advertising."

87.     No rational individual would purchase the Class Product at the prices at which it is sold with full knowledge that the Class Product does not contain "yogurt" and was not derived from "yogurt" (in any form).

88.     Defendant's labeling, packaging, marketing, and advertising of the Class Product as containing and being derived from "yogurt" (in some form) were consumer oriented.

89.     Defendant's labeling, packaging, advertisements, and marketing of the Class Product as containing and being derived from "yogurt" (in some form) was misleading in a material respect, which induced Plaintiff and class members to purchase the product.

90.     By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the New York Subclass have been substantially injured by paying for a product that has diminished, lesser, or no value due to its false claims that the Class Product contains and is derived from "yogurt" (in some form).

91.      Defendant's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Defendant is liable to Plaintiff and the members of the New York Subclass for the actual damages that they have suffered as a result of actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment against Defendant as follows:

a.      Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiffs as the named Class representative, and designating the undersigned as Class Counsel.

b.      On Plaintiffs' First Cause of Action awarding against Defendant the damages that Plaintiff Soto and the other members of the Illinois Subclass have suffered as a result of Defendant's actions, the amount of such damages to determined at trial.

c. On Plaintiffs' Second Cause of Action, awarding against Defendant the damages that Plaintiff Morris and the other members of the New York Subclass have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

d. On Plaintiffs' Third Cause of Action, awarding against Defendant the damages that Plaintiff Morris and the other members of the New York Subclass have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

e. On Plaintiffs' First, Second, and Third Causes of Action, awarding Plaintiffs and the Class interest, costs, and attorneys' fees.

f. Awarding Plaintiffs and the Class such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: January 14, 2025                          Respectfully submitted,

By: */s/ Elizabeth A. Fegan*
Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr., Suite 2400
Chicago, Illinois 60606
Telephone: (312) 741-1019
Facsimile: (312) 264-0100
beth@feganscott.com

**DENLEA & CARTON LLP**

James R. Denlea (*pro hac vice forthcoming*)
Jeffrey I. Carton (*pro hac vice forthcoming*)
Craig M. Cepler *(pro hac vice forthcoming)*
Catherine H. Friesen *(pro hac vice forthcoming)*
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Telephone: (914) 331-0100
Facsimile: (914) 331-0105
jdenlea@denleacarton.com
jcarton@denleacarton.com
ccepler@denleacarton.com
cfriesen@denleacarton.com

*Attorneys for Plaintiffs*