**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHARLENE MORRIS and RAMON SOTO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PIM BRANDS, INC., <br><br> Defendant. | Case No.: 1:25-cv-00405 <br><br> Hon. Andrea R. Wood <br><br> Magistrate Judge Jeannice W. Appenteng |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT PIM BRANDS, INC.'S
MOTION FOR COSTS AND FEES UNDER RULE 41(d),
AND TO STAY PROCEEDINGS OR DISMISS CASE, IF NECESSARY**

Amanda L. Groves*
WINSTON & STRAWN LLP
333 South Grand Avenue
38th Floor
Los Angeles, CA 90071-1543
(216) 615-1851
AGroves@winston.com

Sean H. Suber
Tyree Petty-Williams
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601-9703
(312) 558-7436
SSuber@winston.com
TPettyWilliams@winston.com

Heather M. Donato*
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700
HDonato@winston.com

*Counsel for Defendant PIM Brands, Inc.*

**Pro Hac Vice Forthcoming*

## TABLE OF CONTENTS

Table of Authorities ..................................................................................................................ii

Introduction............................................................................................................................... 1

Background ...............................................................................................................................2

    I.     PIM's Welch's® Fruit 'n Yogurt™ Snacks ............................................................ 2

    II.    Morris files a preempted case against PIM in the Western District of New York ................................................................................................................2

    III.   Morris dismisses the New York case in the face of PIM's Motion to Dismiss, adverse authority from another District, and an adverse procedural ruling in New York ............................................................................... 3

    IV.   Morris's counsel publishes social media advertisements for more plaintiffs, adjusts her Complaint to try to address the flaws in her New York pleadings, and files an identical action in this Court ........................... 5

Legal Standard ......................................................................................................................... 6

Argument ................................................................................................................................. 8

    I.     Morris's litigation tactics entitle PIM to fees and costs incurred in the New York action and in bringing this Motion. ............................................... 8

    II.    PIM's prior Motion to Dismiss, bench letter, and instant Rule 41(d) motion caused unnecessary expenses that Morris should reimburse.................. 10

    III.   The Court should permit PIM to submit a Fee Petition supplemental to this Motion................................................................................ 12

    IV.   The Court should stay this litigation until PIM's costs and fees are satisfied. ......................................................................................................... 12

Conclusion ............................................................................................................................. 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arney v. GlaxoSmithKline*,
2015 WL 867646 (W.D. Okla. Feb. 27, 2015) ........................................................................12

*Bond v. Stanton*,
630 F.2d 1231 (7th Cir. 1980) ................................................................................................10

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ..................................................................................................................4

*Cauley v. Wilson*,
754 F.2d 769 (7th Cir. 1985) ..................................................................................................10

*Chertoff Cap., LLC v. Syversen*,
468 F. Supp. 3d 713 (E.D. Va. 2020) .......................................................................................9

*Crespo v. WFS Fin. Inc.*,
580 F. Supp. 2d 614 (N.D. Ohio 2008) ....................................................................................7

*Embrey v. St. Charles Trading, Inc.*,
2024 WL 916235 (N.D. Ill. Mar. 4, 2024) ..............................................................8, 9, 12, 13

*Esposito v. Piatrowski*,
223 F.3d 497 (7th Cir. 2000) ..............................................................................................7, 13

*Garza v. Citigroup Inc.*,
881 F.3d 277 (3d Cir. 2018) .....................................................................................................8

*Holmstrom v. Metro. Life Ins., Co.*,
2011 WL 2149353 (N.D. Ill. May 31, 2011) .........................................................................10

*McGarity v. Sun-Maid Growers of Cal.*,
2024 WL 4370578 (S.D. Cal. Oct. 1, 2024) .........................................................................4, 5

*Monterey at Malibu Bay Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,
2021 WL 603032 (S.D. Fla. Jan. 11, 2021) ..........................................................................7, 9

*Morris v. Welch Foods Inc.*,
No. 6:24-cv-6385, Doc. 1 (W.D.N.Y.) ............................................................................. *passim*

*MSP Recovery Claims, Series 44, LLC v. Zurich Am. Ins. Co.*,
2024 WL 1514133 (N.D. Ill. Mar. 25, 2024) .........................................................1, 9, 12, 13

*New La. Holdings, LLC v. Arrowsmith*,
 2012 WL 6061710 (N.D. Ill. Dec. 4, 2012) ...................................................................10, 11

*Rogers v. Wal-Mart Stores, Inc.*,
 230 F.3d 868 (6th Cir. 2000) ..............................................................................................7

*Sanderson v. Spectrum Labs, Inc.*,
 248 F.3d 1159 (7th Cir. 2000) ..........................................................................................11

*Soto et al. v. CVS Pharmacy, Inc. et al.*,
 No. 2:24-cv-01876 (W.D. Cal.) ..........................................................................................5

*Soto et al. v. Eyemart Express LLC*,
 No. 3:24-cv-00621 (N.D. Tex.) ..........................................................................................6

*Soto et al. v. Walmart, Inc.*,
 No. 1:24-cv-00288 (E.D. Cal.) ...........................................................................................5

*Soto v. Abbtech Pro. Res., Inc.*,
 No. 1:24-cv-11117 (N.D. Ill.) .............................................................................................6

*Soto v. Gene by Gene, Ltd.*,
 No. 1:24-cv-12700 (N.D. Ill.) .............................................................................................5

*Soto v. GNC Holdings, LLC*,
 No. 1:24-cv-03613 (N.D. Ill.) .............................................................................................5

*Soto v. HBL Beauty & Co. LLC*,
 No. 1:24-cv-02479 (N.D. Ill.) .............................................................................................6

*Soto v. Peoples Auto Parking Co.*,
 No. 1:24-cv-8826 (N.D. Ill.) ...............................................................................................5

*Tsukerman v. W. Cmty. Unit Sch. Dist. No. 12*,
 796 F. App'x 312 (7th Cir. 2020) .....................................................................................12

*Woodhaven Homes & Realty, Inc. v. Hotz*,
 2007 WL 30882 (E.D. Wis. Jan. 4, 2007) ........................................................................13

**Statutes**

21 U.S.C. 343(a)(1) ......................................................................................................................4

FDCA .................................................................................................................................3, 4, 8

ICFA ............................................................................................................................................6

NYGBL §§ 349–350 ..................................................................................................................3, 6

**Other Authorities**

21 C.F.R. § 131.200(a)................................................................................................................3

86 Fed. Reg. 31,117 (June 11, 2021) .........................................................................................4

Fed. R. Civ. P. 41(d) ........................................................................................................ *passim*

Fed. R. Civ. P. 41(d)(2)..............................................................................................................12

**INTRODUCTION**

Defendant PIM Brands, Inc. ("PIM") respectfully moves this Court under Rule 41(d) of the Federal Rules of Civil Procedure to Order Plaintiff Charlene Morris to pay all costs and attorneys' fees that PIM incurred as a result of defending a prior, identical lawsuit that she filed in the Western District of New York, which her counsel then voluntarily dismissed as a matter of pure gamesmanship in the face of adverse rulings. "The idea of Rule 41(d) is that a party can't bring a case, drop it, impose costs on a defendant, and then file suit somewhere else, and expect to get off scot-free." *MSP Recovery Claims, Series 44, LLC v. Zurich Am. Ins. Co.*, 2024 WL 1514133, at *1 (N.D. Ill. Mar. 25, 2024) (Seeger, J.). If that happens, "[t]he court in the second forum can force the plaintiff to bear the costs of litigation.… " *Id.* That is unquestionably what has happened here; therefore, the Court should force Plaintiff to reimburse PIM for its costs and fees.

This case exemplifies the exact type of case manipulation that Rule 41(d) was designed to discourage. Plaintiff Morris originally filed this lawsuit in June 2024 in the Western District of New York. After PIM filed a Motion to Dismiss that showed her claims were preempted, and another federal court issued an opinion that confirmed as much, Morris petitioned the court in New York to give her more than a month to amend her complaint and present a new theory of damages. When the court refused, she and her counsel manipulated the system by voluntarily dismissing the initial action and refiling it in this Court in an attempt to do an end-run around the New York court's decision. As Morris voluntarily dismissed her claims, her counsel published advertisements seeking new plaintiffs to institute this action. Once Morris's counsel found serial Plaintiff Ramon Soto (who filed at least eight other class actions last year), they filed an identical case in this Court. In short, Plaintiff is "[p]laying … games," which must "come[] at a price." *Id.* at *3.

For these reasons, PIM requests this Court **(1)** award PIM its costs and attorneys' fees for defending the prior, identical lawsuit that Morris voluntarily dropped, and for bringing this Motion;

– 1 –

**(2)** permit PIM to file a fee petition detailing its costs and fees incurred from the New York action and in bringing this Motion; and **(3)** immediately stay further proceedings in this matter until all outstanding fees and costs are satisfied, and dismiss this action if Morris fails to comply.

## BACKGROUND

**I.     PIM's Welch's® Fruit 'n Yogurt™ Snacks**

PIM is a multinational company that manufactures and sells some of the nation's most popular candy and confection brands. It is best known for its Welch's® Fruit Snacks products, of which over 100 packs are consumed every second. PIM also manufactures and distributes Welch's® Fruit 'n Yogurt™ Snacks, a variety product it launched nearly 20 years ago. Welch's® Fruit 'n Yogurt™ Snacks are popular in their own right because of their unique composition: a fruit snack with a refrigeration-free, shelf-stable creamy yogurt coating. As stated on the label, each snack is "Made with Real Fruit Surrounded by Creamy Yogurt." **Ex. C**.[1] Pictured on the front of each package are images of real fruit and fruit snacks covered in a yogurty outer shell. *Id.* The ingredients listed on the back label inform consumers that the yogurt coating is partially comprised of yogurt powder: "cultured whey and nonfat milk." *See, e.g.*, **Ex. D**. The back of each package also includes detailed nutrition facts that inform consumers of the product's calorie, fat, sodium, and sugar content. *Id.* Notably, PIM does not claim anywhere on the label, ingredients list, or website for Welch's® Fruit 'n Yogurt™ Snacks that the product is "healthy" or that it contains the live bacterial cultures or associated health benefits of standardized refrigerated yogurt products.

**II.    Morris files a preempted case against PIM in the Western District of New York**

Despite PIM's clear and explicit representations, Morris filed a class action complaint in the Western District of New York on June 18, 2024, alleging that the packaging for Welch's® Fruit

---

[1] Unless otherwise stated, all exhibits referenced herein are attached to the corresponding Declaration of Sean H. Suber.

– 2 –

'n Yogurt<sup>TM</sup> Snacks misleads consumers in violation of New York General Business Law ("NYGBL") §§ 349–350. *See Morris v. Welch Foods Inc.*, No. 6:24-cv-6385, Doc. 1 (W.D.N.Y.) ("NY Action").[2] According to Morris, and notwithstanding the lack of any health claims on the product, the snacks provide an "illusion of health while delivering the harms of an ultra-processed food." **Ex. A**, NY Action, Doc. 5, Am. Compl., ¶ 1. She alleged, without basis, that reasonable consumers would understand the snacks to contain live bacteria cultures and, therefore, be "healthy to consume." *Id.* ¶ 3. Relying on regulations promulgated by the Food and Drug Administration ("FDA"), Morris claimed that PIM improperly fails to state on the front of each package that there are no live cultures in its product—in other words, no *real* yogurt.

Her complaint hinged on the FDA's Standard of Identity ("SOI") for yogurt, which says that yogurt has **"a *characterizing bacterial culture*** that contains the lactic acid-producing bacteria, *Lactobacillus delbrueckii subsp. bulgaricus* and *Streptococcus thermophilus*." 21 C.F.R. § 131.200(a) (emphasis added). She alleged that because the ingredients list for PIM's product does not include "any live active yogurt cultures such as L. Bulgaricus, S. Thermophilus, L. Acidophilus, Bifidus, or L. Casei," and because "such bacterial cultures are a necessary component of yogurt, according to the Standards of Identity … established under the Federal Food, Drug & Cosmetic Act ('FDCA')," she believed that PIM misleads consumers by creating the illusion that its product contains real yogurt and provides related health benefits. *See* **Ex. A**, ¶¶ 25, 28.

### III. Morris dismisses the New York case in the face of PIM's Motion to Dismiss, adverse authority from another District, and an adverse procedural ruling in New York

PIM moved to dismiss Morris's Amended Complaint because, among other things, Morris's claims rely on federal law and are expressly and impliedly preempted. *See* **Ex. B**, NY

---

[2] Morris later filed an Amended Complaint adding PIM as a defendant and dismissing Welch Foods Inc. *See* NY Action, Doc. 5, Am. Compl.

– 3 –

Action, Doc. 17-1. The express preemption argument, in short, was that the FDA's SOI for yogurt—particularly the requirement that yogurt products contain live bacterial cultures—does not apply to nonstandardized products that contain dried yogurt powder like Welch's® Fruit 'n Yogurt™ Snacks. *Id.* at 14. This interpretation came directly from the FDA, which published its 2021 Final Rule that said, "[f]oods that do not purport to be or are not represented as yogurt, are not subject to these requirements. In our experience, products such as frozen yogurt, yogurt-coated cereal, and dried yogurt powder are not represented as and do not purport to be yogurt." 86 Fed. Reg. 31,117, 31,124 (June 11, 2021). According to the FDA, such products "are nonstandardized foods," meaning they may properly use "[c]ommon or usual names" that are "generally established by common usage." *Id.* Further, "[b]ecause no such regulation for [yogurt-based] nonstandardized foods exists, they should be labeled with their common usage names (*e.g.*, 'frozen yogurt'), provided that the names do not mislead consumers (see 21 U.S.C. 343(a)(1))." *Id.*

PIM also argued that Morris's claims were impliedly preempted because her allegations relied on the FDCA, which "provides no private right of action." **Ex. B** at 18. PIM highlighted binding precedent that characterized the "narrow gap" through which a state law claim must fit to avoid FDCA preemption. *Id.* at 18–19 (citing, among other things, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001), which found that claims were impliedly preempted when "the existence of these federal enactments [was] a critical element in [the plaintiff's] case").

PIM's position was confirmed as correct a week later, on October 1, 2024, by Judge Cynthia Bashant's opinion in *McGarity v. Sun-Maid Growers of California*, 2024 WL 4370578 (S.D. Cal. Oct. 1, 2024). In a case with strikingly similar facts, Judge Bashant ruled that where "each of Plaintiff's claims is based on the allegation that Defendant violates state law because the

Products are not covered with yogurt that conforms with the FDA's standard of identity for yogurt, the Complaint in its entirety is preempted by the FDA[.]" *Id.* at *4.

Having learned that the basis of her claims was unfounded, Morris asked the court for more time to file a motion for leave to file a second amended complaint and to have PIM's motion terminated in lieu of filing a response to PIM's motion. *See* NY Action, Doc. 23. PIM objected to Morris's request the same day. *See id.*, Doc. 24. The court rejected Plaintiff's request. *See id.*, Doc. 25. After this adverse ruling in New York, and recognizing that an adverse dispositive ruling was on the horizon, Morris filed a Notice of Voluntary Dismissal on October 23, 2024. *See id.*, Doc. 26. As mandated by Rule 41, the court dismissed the case without prejudice. *See id.*, Doc. 27.

**IV. Morris's counsel publishes social media advertisements for more plaintiffs, adjusts her Complaint to try to address the flaws in her New York pleadings, and files an identical action in this Court**

Because the court in the NY Action did not give them what they wanted in light of the *McGarity* ruling, voluntary dismissal became Morris's strategic best option, so her counsel dismissed the NY Action and began setting the stage for the same case here. On October 8, 2024, Plaintiffs' counsel published advertisements online looking for consumers who purchased Welch's® Fruit 'n Yogurt™ Snacks. *See* Suber Decl. ¶ 6. The advertisements said that "[a] potential consumer class action is being investigated concerning the product's marketing claims." **Ex. E**. Then, just a few months later, Morris brought the same claims to this Court, based on identical facts in the NY Action, but this time joining as co-Plaintiff a serial litigator who was a plaintiff in at least eight different putative class actions last year against companies such as Walmart, CVS, and GNC.[3] She fashions her newest Complaint in response to PIM's arguments in

---

[3] *See Soto et al. v. Walmart, Inc.*, No. 1:24-cv-00288 (E.D. Cal.); *Soto et al. v. CVS Pharmacy, Inc. et al.*, No. 2:24-cv-01876 (W.D. Cal.); *Soto v. GNC Holdings, LLC*, No. 1:24-cv-03613 (N.D. Ill.) (Gottschall, J.); *Soto v. Gene by Gene, Ltd.*, No. 1:24-cv-12700 (N.D. Ill.) (Alexakis, J.); *Soto v. Peoples Auto Parking*

– 5 –

its original Motion to Dismiss to preemptively counter another dismissal motion. Her main change to the allegations is to superficially allege that PIM falsely claims its product contains yogurt "in some form," rather than just yogurt, but her claims are otherwise based on the same theory, as demonstrated by a redline of the NY Action and this one:

> 8. 9. Consumers, like Plaintiffs, who purchased Defendant's *Fruit 'n Yogurt Snacks* have been deceived by Defendant's false and misleading claims that this product contains "creamy yogurt (in some form)," when it does not, and is healthy to consume, when it is not, and are entitled to redress through this action for Defendant's deceptive conduct.

**Ex. F**, Redline of Complaints, at 7. Indeed, apart from these minor differences, Morris and Soto otherwise regurgitate the language from the NY Action, as Morris continues to bring NYGBL claims on behalf of a putative New York subclass, with Soto now bringing claims under the Illinois Consumer Fraud Act ("ICFA") on behalf of a putative Illinois subclass. *See id.*

If there were any doubt that this action by Plaintiff Morris is the *same* case as the NY Action, Plaintiffs' counsel confirmed as much after serving PIM and emailing defense counsel with the subject line "Morrison [sic] v. Pim Brands," stating that they "look forward to ***our continued communication about the matter***." **Ex. G** (emphasis added).

## LEGAL STANDARD

"If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant," then, under Rule 41(d), this Court may order the plaintiff to pay the defendant's resulting costs and attorneys' fees and may stay the proceedings until the plaintiff has complied. *See* Fed. R. Civ. P. 41(d).

---

*Co.*, No. 1:24-cv-8826 (N.D. Ill.) (Tharp, J.); *Soto v. HBL Beauty & Co. LLC*, No. 1:24-cv-02479 (N.D. Ill.) (Pacold, J.); *Soto v. Abbtech Pro. Res., Inc.*, No. 1:24-cv-11117 (N.D. Ill.) (Jenkins, J.); *Soto et al. v. Eyemart Express LLC*, No. 3:24-cv-00621 (N.D. Tex.).

The purpose of Rule 41(d) is "to deter forum shopping and vexatious litigation." *Esposito v. Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000). The rule does not impose a high burden on defendants. The second action need not be *identical* to the first or even allege all the same causes of action. So long as the factual basis and parties are substantially similar, then a plaintiff crosses into impermissible territory worthy of redress. *See Crespo v. WFS Fin. Inc.*, 580 F. Supp. 2d 614, 625 (N.D. Ohio 2008) (explaining that Rule 41(d) requires only that re-filed action be "based on or includ[e] the same claim against the same defendant"). Stated another way, "the mere addition of a defendant or a new claim or two does not prevent the application of Rule 41(d) so long as there are claims in the new case that arise from the same nucleus of operative facts such that the new case can be said to be 'based on or including' previously brought and dismissed claims." *Monterey at Malibu Bay Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, 2021 WL 603032, at *4 (S.D. Fla. Jan. 11, 2021) (citation omitted). Thus, neither relying on different statutes nor bringing in new plaintiffs can shield the original plaintiff from liability.

In addition, even though Rule 41(d) is intended in part to deter vexatious conduct, "nothing in the language of Rule 41(d) … suggests that a defendant must show 'bad faith' before a district court can order payment of costs incurred in a voluntarily dismissed previous action." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir. 2000) (citations omitted). Indeed, "Rule 41(d) is meant not only to prevent vexatious litigation, but also to prevent forum shopping, 'especially by plaintiffs who have suffered setbacks in one court and dismiss to try their luck somewhere else' to 'gain any tactical advantage by dismissing and refiling th[e] suit.'" *Id.* (citations omitted). Thus, this Court need only discern whether unnecessary costs have been created by a plaintiff's conduct; it need not discern a plaintiff's motivations or make a finding of bad faith.

**ARGUMENT**

I. **Morris's litigation tactics entitle PIM to fees and costs incurred in the New York action and in bringing this Motion.**

Rule 41(d) was made for litigants like Morris, as it "prevents a plaintiff from 'gaining any tactical advantage by dismissing and refiling' the lawsuit." *Garza v. Citigroup Inc.*, 881 F.3d 277, 282 (3d Cir. 2018) (citation omitted). When a plaintiff voluntarily dismisses a case and then refiles it, and "the primary purpose" is "avoiding compliance with adverse rulings, and potential further adverse rulings," courts in this District have not hesitated to find that this behavior falls squarely within conduct warranting relief under Rule 41(d). *Embrey v. St. Charles Trading, Inc.*, 2024 WL 916235, at *4 (N.D. Ill. Mar. 4, 2024) (Gettleman, J.). Such relief is warranted here.

As described above, Morris voluntarily dismissed the NY Action only *after* PIM filed its likely meritorious Motion to Dismiss, and only *after* the district court in New York refused to provide Morris with a prolonged period to amend her complaint. Morris then used PIM's motion, and the time that she secured by voluntarily dismissing her case, to try to craft a winning version of her prior Complaint before a different court (this Court), which she hoped would be more favorably disposed to her claims. The few changes Morris made in her new Complaint clearly demonstrate this gamesmanship. For example, Plaintiffs now allege in the new Complaint that their action is not expressly or impliedly preempted by the FDCA—assertions that were notably absent from the New York complaint and were first introduced in PIM's Motion to Dismiss. Doc. 1, ¶ 31. Similarly, Plaintiffs now wordsmith Morris's argument that the yogurt powder in PIM's product is not real yogurt, instead claiming the yogurt powder is not "derived from" real yogurt. *Id*. at ¶ 27. This, too, is an apparent attempt to address the Motion to Dismiss's point that the FDA's SOI for yogurt does not apply to nonstandardized yogurt products like PIM's. In any event, even if these changes did not demonstrate Plaintiffs' attempt to forum-shop (which they do), they are

– 8 –

plainly part and parcel of the prior allegations filed in New York. In other words, the "claims in the new case [] arise from the same nucleus of operative facts such that the new case can be said to be 'based on or including' previously brought and dismissed claims." *Monterey at Malibu Bay Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, 2021 WL 603032, at *4.

Courts routinely award costs and fees under Rule 41(d) under similar circumstances. For example, just last year, in *Embrey v. St. Charles Trading, Inc.*, Judge Gettleman awarded costs and fees under Rule 41(d) to the defendant after finding that the plaintiff filed the second lawsuit mainly to avoid an adverse ruling before another court. *See* 2024 WL 916235, at *4 (awarding fees and noting that the "plaintiff needlessly prolonged (and consequently, increased the cost of) the [prior] litigation, only to dismiss the case when it became clear that the [prior] court judge would likely issue additional adverse rulings against him"). Similarly, last year, Judge Seeger granted a motion under Rule 41(d) after a plaintiff was playing a game of "[s]hell gamesmanship," using different plaintiff entities to transfer the rights of claims even though, "[f]or all intents and purposes, it's the same plaintiff." *MSP Recovery*, 2024 WL 1514133, at *3. Because the "Court c[ould] see what [wa]s going on," and because not awarding the defendant relief would "encourage gamesmanship," Judge Seeger granted the defendants their costs and fees. *See id.* Courts around the country rule similarly, like the court in *Chertoff Capital, LLC v. Syversen*, which granted a Rule 41(d) motion where the plaintiff voluntarily dismissed its initial complaint to avoid an anticipated adverse ruling. 468 F. Supp. 3d 713 (E.D. Va. 2020). The court ruled for the defendant because "[t]he procedural history of this matter makes clear that plaintiff voluntarily dismissed the Prior Case in order to gain a tactical advantage." *Id.* at 718.

For the same reasons, an award of costs and fees is appropriate here.

**II. PIM's prior Motion to Dismiss, bench letter, and instant Rule 41(d) motion caused unnecessary expenses that Morris should reimburse.**

When "a case is voluntarily dismissed and re-filed by the plaintiff," costs and "attorneys' fees are awarded to the defendant to compensate for the unnecessary expenses incurred by the litigation." *New La. Holdings, LLC v. Arrowsmith*, 2012 WL 6061710, at *11 (N.D. Ill. Dec. 4, 2012) (Castillo, J.) (citing *Cauley v. Wilson*, 754 F.2d 769, 772 (7th Cir. 1985). According to the Seventh Circuit, unnecessary expense is "duplicative legal expenses." *Cauley*, 754 F.3d at 772 (citation omitted). Duplicative means just that: work that is redundant and unnecessary, like drafting a motion to dismiss and a motion for fees and costs. *See id.* at 773 (explaining that, out of the work done "researching, drafting, and filing pleadings," along with "discovery" and "trial preparation," the only costs and fees that were "not compensable" were the costs and "fees for expenses incurred in research, discovery or preparation"). Likewise, "[t]he Seventh Circuit teaches that attorney's fees incurred in litigating and establishing an attorney's entitlement to fees are generally compensable." *Holmstrom v. Metro. Life Ins., Co.*, 2011 WL 2149353, at *8 (N.D. Ill. May 31, 2011) (citing *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980)). That is why courts in this District have held that the costs and fees in bringing a motion like this one "are appropriate and that they help further the purpose of Rule 41(d), which is, in part, to prevent vexatious litigation." *New La. Holdings*, 2012 WL 6061710, at *13 (citation omitted).

It is against this backdrop that PIM submits that it should be reimbursed for unnecessary costs and attorneys' fees incurred for drafting and moving to dismiss in the New York action, which is of no use in the instant case. Not only did PIM's motion rely primarily on law relevant to a different Circuit, but it was also directed toward a complaint that Morris has since changed to intentionally undercut the prior arguments. Thus, the hours spent preparing PIM's motion against

the original Complaint are no longer productive and will not aid in defending this action. Indeed, the work spent drafting and filing a new Motion to Dismiss will be new.

Separately, PIM submits that it should be awarded fees incurred researching and drafting its response to Morris's bench letter asking to terminate PIM's Motion to Dismiss. Like the Motion to Dismiss, the research for the bench letter will not be useful again, as the work PIM did to preserve its Motion to Dismiss and keep the New York action going is also of no use here.

Finally, the Court should award PIM its costs and fees associated with researching, drafting, and filing the instant Rule 41(d) motion. This motion would not have been necessary were it not for Morris's decision to voluntarily dismiss the New York action, and PIM would not have to bear the additional costs of seeking redress for her actions. Moreover, requiring PIM to bear the expenses associated with seeking relief here would no doubt deny PIM a remedy and undercut the purpose of the rule.

Of course, such an award would be well within the Court's discretion. In *New Louisiana Holdings, LLC v. Arrowsmith*, for example, the court awarded the defendant $28,518.05 for hours billed on unnecessary litigation: $14,808.05 in attorneys' fees for work spent preparing a motion to dismiss in the first action and $13,710 in attorneys' fees associated with bringing the Rule 41(d) motion for sanctions in the second action. *See* 2012 WL 6061710, at *13 (a total award of "$28,518.05" in costs and attorneys' fees, which is $39,228.73 in 2025 adjusted for inflation); *see also Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159 (7th Cir. 2000) (affirming an award of "costs, including attorneys' fees, in the amount of $38,366.51" under Rule 41(d) which is $70,388.13 in 2025 when adjusted for inflation). A similar award of costs and fees here would be sufficient to account for PIM's wasted resources and efforts. At a minimum, a ruling for PIM would, at least, undercut the tactical advantage Morris stands to gain by filing a new Complaint in a new forum.

## III. The Court should permit PIM to submit a Fee Petition supplemental to this Motion.

If the Court grants this Motion, PIM requests permission to file a separate fee petition within two weeks after the resolution of this motion. The fee petition will detail PIM's unnecessary costs and fees incurred during the NY Action and in bringing this Motion for costs and fees.

Bifurcating a Rule 41(d) motion between liability and fees is standard practice. *See Embrey*, 2024 WL 916235, at *5 (granting a Rule 41(d) motion and permitting the defendant to file a separate petition for fees after "agree[ing] that defendants' approach is appropriate" because "it would have been premature to file a fee and costs petition, along with evidence in support of their petition, before the court rules on their motion"); *MSP Recovery*, 2024 WL 1514133, at *3 (granting a Rule 41(d) motion and setting a schedule for the parties to meet and confer about costs); *see also Arney v. GlaxoSmithKline*, 2015 WL 867646, at *1 (W.D. Okla. Feb. 27, 2015) ("Defendant does not ask that Plaintiff be ordered to pay a particular amount but, instead, proposes to file an itemization of costs properly available to it under Rule 41(d). The Court finds this proposal to be satisfactory."). In this case, such bifurcation would allow PIM to adequately assess its costs and reasonable attorneys' fees under Seventh Circuit precedent, and it would allow the parties to fully brief this Motion. Thus, the Court should enter a briefing schedule for PIM to submit a petition itemizing its costs and fees.

## IV. The Court should stay this litigation until PIM's costs and fees are satisfied.

Finally, in addition to granting an award for costs and fees, the Court should stay this litigation until PIM's expenses are paid—or dismiss this action if that day never comes. The Rules grant the Court express authority to take these measures, as the Court "may stay the proceedings until the plaintiff has complied" with an order under Rule 41(d). Fed. R. Civ. P. 41(d)(2).

The Seventh Circuit has endorsed this approach, including dismissal, finding that such a ruling is not an abuse of discretion. *See Tsukerman v. W. Cmty. Unit Sch. Dist. No. 12*, 796 F. App'x

– 12 –

312, 312 (7th Cir. 2020) (affirming judgment where a district court stayed the proceedings until the plaintiff paid the defendant's expenses from prior litigation and, when he did not pay, dismissed the case for want of prosecution); *Esposito v. Piatrowski*, 223 F.3d at 499 (same). Indeed, such stays are a virtually automatic result of a successful Rule 41(d) motion. *See MSP Recovery*, 2024 WL 1514133, at *3; *Embrey v. St. Charles Trading, Inc.*, 2024 WL 916235, at *5; *Woodhaven Homes & Realty, Inc. v. Hotz*, 2007 WL 30882, at *2 (E.D. Wis. Jan. 4, 2007) ("[P]ursuant to Rule 41(d), the Court ordered Woodhaven to pay Robbins $ 17,040.42 in attorney's fees, and imposed a stay on proceedings not to be lifted until such payment was made.").

Thus, the Court should immediately stay proceedings upon granting this Motion for costs and fees and should dismiss this action if Morris does not pay. The proposed ruling is not only fair and appropriate, but it will also remedy the unnecessary expenses Morris's tactics have imposed on PIM and the judicial system and re-level the playing field in this controversy.

## CONCLUSION

For these reasons, this Court should grant PIM's motion in its entirety and **(1)** award PIM costs and attorneys' fees incurred litigating the prior, identical lawsuit that Morris voluntarily withdrew, as well as PIM's costs and fees for the instant Motion; **(2)** set a schedule for PIM to file a fee petition detailing those costs and fees; and **(3)** immediately stay further proceedings until all outstanding fees and costs are satisfied, and dismiss this action if Morris fails to comply.

– 14 –

Dated: January 27, 2025

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: /s/ Sean H. Suber
Sean H. Suber
Tyree Petty-Williams
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601-9703
(312) 558-5600
SSuber@winston.com
TPettyWilliams@winston.com

Amanda L. Groves*
WINSTON & STRAWN LLP
333 South Grand Avenue
38th Floor
Los Angeles, CA 90071-1543
(216) 615-1700
AGroves@winston.com

Heather M. Donato*
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700
HDonato@winston.com

*Counsel for Defendant PIM Brands, Inc.*

*Pro Hac Vice Pending*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of January, 2025, I caused the attached copy of the foregoing to be served on the following persons by electronic case filing:

Elizabeth A. Fegan
Megan E. Shannon
**Fegan Scott LLC**
150 S. Wacker Dr.,
24th Floor
Chicago, IL 60606
beth@feganscott.com
megan@feganscott.com
(312) 741-1019

*Attorney for Plaintiffs Charlene Morris and Ramon Soto*

/s/ Sean H. Suber
*Attorney for Defendant*

– 15 –