**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHARLENE MORRIS and RAMON SOTO, individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>   v.<br><br>PIM BRANDS, INC.,<br><br>           Defendant. | Case No.: 1:25-cv-00405<br><br>Hon. Andrea R. Wood<br><br>Magistrate Judge Jeannice W. Appenteng |

**DEFENDANT PIM BRANDS, INC.'S**
**PETITION FOR ATTORNEYS' FEES AND COSTS**

Pursuant to the Court's September 24, 2025, Order (Doc. 32), Fed. R. Civ. P. 41(d), and 28 U.S.C. § 1920, Defendant PIM Brands, Inc. ("PIM") submits this Petition, the Declaration of Sean H. Suber, and the exhibits thereto, in support of its requests for an Order awarding PIM $102,835.50 in attorneys' fees and $7,072.18 in litigation costs.

**BACKGROUND**

As this Court knows, Plaintiff Charlene Morris filed a putative class action complaint against PIM in the Western District of New York on June 18, 2024, alleging that PIM's packaging for its Welch's® Fruit 'n Yogurt™ Snacks misleads consumers. *See Morris v. Welch Foods Inc.*, No. 6:24-cv-6385, Doc. 1 (W.D.N.Y.) ("*New York Action*").[1] Morris voluntarily dismissed her complaint after four months of litigation, seeking to circumvent unfavorably developing case law. This led to PIM wasting tens of thousands of dollars in attorneys' fees and costs. Indeed, PIM

---

[1] Morris later filed an Amended Complaint adding PIM as a defendant and dismissing Welch Foods Inc. *See New York Action*, Doc. 5, Am. Compl.

– 1 –

investigated Morris's claim extensively and spent dozens of hours researching, drafting, and filing a motion to dismiss the complaint on preemption grounds. *See id.* at Doc. 17 & 17-1. The court ordered a response from Morris by October 24. Shortly after the motion was filed, however, the court in *McGarity v. Sun-Maid Growers of California* dismissed a very similar case based on the arguments PIM raised in the New York Action. 2024 WL 4370578 (S.D. Cal. Oct. 1, 2024). Then, on October 21, 2024, nearly a month after PIM's motion to dismiss, three weeks after the *McGarity* ruling, and **three days** before a response to the motion to dismiss was due, Morris filed an emergency letter brief requesting an additional three weeks to respond to PIM's motion. *See New York Action*, Doc. 23. PIM responded the same day. The Court ultimately denied Morris's request on October 22 and instructed Morris that she could "file for leave to amend . . . in the ordinary course[.]" *Id.* at Doc. 25. Faced with little time to amend her complaint before the impending response deadline, Morris voluntarily dismissed her action on October 23.

Morris refiled the nearly identical action before this Court. In response, PIM filed its Motion for Costs and Fees pursuant to Federal Rule of Civil Procedure 41(d). Doc. 13. The Court granted the motion on September 24, 2025, ordering PIM to submit a petition for costs and fees incurred in the New York Action. Doc. 32. Thus, PIM's counsel reviewed its invoices for work performed in connection with the voluntary dismissal of the New York Action. *See* Exs. 1–5; Suber Decl. ¶ 5. Consistent with the Court's Order and its discretion to award fees, PIM seeks $102,835.50 in attorneys' fees incurred in litigating the New York Action.

## ARGUMENT

**I. Defendant is Entitled to the Requested Attorneys' Fees.**

    **A. PIM's work in the New York Action cannot be reused here.**

Over a fourth month period, PIM incurred and paid $102,835.50 in legal fees and costs during the New York Action for researching a complex area of law, drafting a detailed motion to

dismiss Plaintiff Morris's New York claims, conferring with Plaintiff's counsel about amending the complaint, strategizing for an anticipated amended complaint from Plaintiff addressing preemption issues under New York law, meeting and conferring with Plaintiff's counsel about leave to amend, and responding to Plaintiff's bench letter to the Court requesting more time. *See* Ex. 6. None of this work can be reused, even with respect to the Plaintiffs' New York claims.

For instance, even though Plaintiff Morris brings her New York claims here, the Northern District of Illinois is governed by the Seventh Circuit's approach to preemption (not the Second Circuit's) so all of the New York and Second Circuit authority that PIM relied on is only persuasive, not binding. Further, Plaintiffs' allegations have been strategically rewritten to undercut nearly every argument PIM made in its motion to dismiss the New York Action. Accordingly, PIM's next motion to dismiss must be drafted from scratch and PIM must do research applying its preemption arguments to the law of this Circuit, not the Second Circuit. For example, in its original motion to dismiss, PIM argued that Plaintiff Morris's claims were expressly preempted because the complaint accused PIM's product of being misleadingly non-complaint with the FDA's standard of identity for standardized yogurt, which does not apply to PIM's yogurt powder, rather than the FDA's standard of identity for non-standardized yogurt products. *New York Action*, Doc. 17-1 at 7–10. In the instant complaint, Plaintiffs now argue that PIM misleading sells a product that is not complaint with the FDA's standard of identity for non-standardized yogurt, in that the product is not *derived from* standardized yogurt. *See* Doc. 1 ¶¶ 30–34. Similarly, PIM argued in the New York Action that Plaintiff Morris's claims were impliedly preempted because they sought to enforce mandates promulgated by the Food Drug and Cosmetic Act (FDCA), 21 U.S.C.S. § 301 et seq., rather than by New York state law, when the FDCA does not provide a private cause of action. *Id.* at 10–13. To counter this argument, Plaintiffs allege in the instant complaint that "Plaintiffs' claims

. . . [are] not preempted by federal law because they plead state law causes of action that exist separately from the FDCA and its implementing regulations, but does not seek to impose requirements different from them." Doc. 1 ¶ 31. Though Plaintiffs' cursory allegation is insufficient to survive preemption, PIM's motion to dismiss the instant action will now require a different explanation from the New York Action.[2]

Finally, PIM obviously cannot "reuse" the time and effort spent conferring with counsel in the New York Action, strategizing regarding the expected amended complaint in light of *McGarity*, or responding to Plaintiff Morris's emergency bench letter. The fees incurred for this work, as well as for the motion to dismiss, have been sunken in the New York Action. So, as explained above, the fact that Plaintiff Morris's claims in the New York Action and Plaintiffs' claims in this one relate to the same subject matter will not result in any cost savings for PIM. *See New La. Holdings, LLC v. Arrowsmith*, No. 11 C 5031, 2012 U.S. Dist. LEXIS 173313, at *40 (N.D. Ill. Dec. 4, 2012) (noting that even if some work in the original action could prove useful, "it is unlikely that they could have replicated that work verbatim into a new document to be filed before this Court.").

### B. The hourly rates are reasonable.

Three attorneys—Amanda Groves, Sean Suber, and Heather Donato—billed hours on the tasks related to the New York Action. *See* Exs. 1–5; Suber Decl. ¶ 20. Ms. Groves and Mr. Suber are Partners at Winston and Strawn LLP who, at the time of the New York Action, billed PIM $1,130 per hour. Suber Decl. ¶¶ 21–22. Ms. Donato is a Mid-Level Associate at Winston and

---

[2] As another example, Plaintiffs reframed their allegations to try to preclude PIM from reusing its arguments on the merits. PIM had argued that Plaintiff Morris's claims failed because no reasonable consumer would expect PIM's dried, shelf-stable yogurt product to contain live, active cultures. *New York Action*, Doc. 17-1 at 16–23. Though any related allegations were absent from Plaintiff Morris's complaint in the New York Action, Plaintiffs now somehow allege (without explanation or support) that live, active cultures are something a reasonable consumer expects from yogurt. *See* Doc. 1, ¶ 28. So now PIM must incur the cost of drafting an entirely new motion to dismiss to address these new specious claims.

Strawn LLP who graduated from law school in 2022. *Id.* ¶ 23. Her billable rate for PIM at the time of the New York Action was $680 per hour. *Id.*

Winston and Strawn LLP's rates are reasonable, as they were negotiated and paid under a unique fee arrangement with PIM for Partner and Associate rates, which resulted in lower rates than commensurate rates in the New York City and Chicago legal markets. *Id.* ¶ 25. *See Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.*, No. 17-cv-8872, 2020 U.S. Dist. LEXIS 76918, at *5 (N.D. Ill. May 1, 2020) (granting motion for attorneys' fees of $108,445.10 while finding, among other things, that "fees are reasonable if a 'fee-paying client' would have paid them" and if the petitioner provides "detailed time sheets . . . specifying who did what and at what cost." (internal citations omitted)).

### C. The hours expended were reasonable.

PIM seeks payment of $102,835.50 of fees for 89.7 hours of attorney time (5.9 hours for Amanda Groves; 55.5 hours for Sean Suber; and 28.3 hours for Heather Donato) spent on work in connection with the New York Action. *See* Ex. 6. During the 89.7 hours, most of the time spent was on the motion to dismiss as described above. Additionally, PIM counsel conferred with Plaintiff's counsel about a potential amended complaint, so PIM's counsel reasonably spent time strategizing for the anticipated amendment. *Id.*

The 89.7 hours spent by counsel in the New York action were both reasonable and efficient, reflecting counsel's effort to limit costs on its client despite its zealous advocacy. *See Apollo Petro. Sols., LLC v. Nano Gas Techs., Inc.*, No. 20 C 2311, 2022 U.S. Dist. LEXIS 151052 at *7 (N.D. Ill. May 3, 2022) (finding that "none of the hours worked by the attorneys in this case were excessive, redundant, or otherwise unnecessary" where "attorneys spent 246.2 hours . . . mainly [] researching and drafting a motion to dismiss, a motion for attorney's fees, and working on the appeal."). Indeed, counsel successfully came up with multiple independent bases to dismiss the

New York Action, which were subsequently confirmed by the *McGarity* court and which motivated Plaintiff to dismiss the New York Action and refile here. Additionally, counsel ensured that the appropriate timekeepers were used for the work performed to promote cost efficiency. Suber Decl. ¶ 24. Thus, the hours spent by counsel provided significant value to PIM, demonstrating that the hours spent were reasonable.

**II.    Defendant is Entitled to the Requested Costs for Litigation Expenses.**

PIM seeks payment of $7,072.18 for standard litigation costs, including filing fees and computerized legal research related to charges imposed for common research databases. *See* Exs. 1–5; Suber Decl. ¶ 12. These fees are expected during any litigation, so they will undoubtedly be duplicated in this litigation once dispositive motion briefing begins on the complaint. For this reason, PIM requests that this Court compensate it for these sunken costs.

## CONCLUSION

For the foregoing reasons, PIM respectfully requests that the Court award **(1)** attorneys' fees in the amount of $102,835.50 and **(2)** litigation costs in the amount of $7,072.18.

Dated: October 8, 2025  
Chicago, Illinois

Respectfully submitted,

By: */s/ Sean H. Suber*  
Sean H. Suber  
Tyree Petty-Williams  
WINSTON & STRAWN LLP  
35 W. Wacker Dr.  
Chicago, IL 60601-9703  
(312) 558-5600  
SSuber@winston.com  
TPettyWilliams@winston.com  

Amanda L. Groves*  
WINSTON & STRAWN LLP  
333 South Grand Avenue  
38th Floor  
Los Angeles, CA 90071-1543  
(216) 615-1700  
AGroves@winston.com

Heather M. Donato*
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700
HDonato@winston.com

*Counsel for Defendant PIM Brands, Inc.*

*Admitted Pro Hac Vice

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of October 2025, I caused the attached copy of the foregoing to be served on the following persons by electronic case filing:

Elizabeth A. Fegan
Megan E. Shannon
**Fegan Scott LLC**
150 S. Wacker Dr.,
24th Floor
Chicago, IL 60606
beth@feganscott.com
megan@feganscott.com
(312) 741-1019

*Attorneys for Plaintiffs Charlene Morris and Ramon Soto*

/s/ *Heather Donato*
*Heather Donato*
*Counsel for Defendant*