UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-------------------------------------------------------------------X

RAMON SOTO and CHARLENE MORRIS,
individually and on behalf of all others similarly
situated,

          Plaintiffs,

    v.

PIM BRANDS, INC.,

          Defendant.

Case No.: 1:25-cv-00405 (ARW)

-------------------------------------------------------------------X

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT'S PETITION FOR ATTORNEY'S COSTS AND FEES**

Defendant Pim Brand, Inc.'s ("Defendant") Petition for Fees is (i) excessive, (ii) seeks recovery for work which has utility in the present case, and (iii) fails to meet Defendant's heavy burden of justifying the exorbitant amount requested.

On September 24, 2025, this Court granted Defendant's Motion for Costs and Fees, and ordered Defendant to submit a petition "itemizing its recoverable costs and fees." [ECF 32]. Specifically, the Court noted that it "should not impose costs associated with work that will still be useful to the defendants in the instant case." *Id.* at 4. The Court recognized that, "given the New York action and the present action are based on the same claims, PIM's work in the New York action may prove useful here, should PIM move to dismiss this action. However, differences in Second Circuit and Seventh Circuit precedent, as well as Plaintiff's recent efforts to address the preemption defense, may render portions of PIM's past research irrelevant. To the

1

<u>extent PIM's work is no longer useful in the present action,</u> costs and fees are appropriate." *Id.* at 5 (emphasis added).

Notwithstanding the Court's admonition that only "portions" of Defendant's past research would be rendered irrelevant, Defendant's Petition for Fees seeks **$102,835.50** in attorneys' fees and **$7,072.18** in litigation "costs," representing what appears to be almost 100% of the total fees purportedly expended in defending the New York Action with little or no justification for the fees. As detailed below, review of the billing entries submitted in support of the fee application demonstrates that the amount sought is clearly excessive and that Defendant opportunistically, punitively, and vindictively seeks to recover a windfall without regard to whether such expenditures are connected to work "which is no longer useful in the present action." Accordingly, as set forth below, the Petition for Fees ("Petition") should be denied in its entirety or, in the alternative, substantially reduced to reflect the actual time entries that can be tied directly to work that is no longer useful to PIM's anticipated motion to dismiss.[1]

"The party submitting the fee petition has 'the burden of justifying the fees requested.'" *Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 959 (N.D. Ill. 2010) (quoting *Spellan v. Bd. of Ed. for Dist. 111,* 59 F.3d 642, 646 (7th Cir.1995)); *see also Midwest Operating Eng'rs Welfare Fund v. Davis & Son Excavation,* 19 CV 1153, 2023 U.S. Dist. LEXIS 126234, at * 3 (N.D. Ill. July 21, 2023) ("the party seeking fees bears the burden of establishing the required elements for a fee award") (quoting *Spegon v. Cath. Bishop of Chi.,* 175 F.3d 544, 550 (7th Cir. 1999)). "Once a petitioning party provides evidence of the proposed fees' reasonableness, the burden shifts to the other party to demonstrate the award's unreasonableness." *Wachovia Secs., LLC v.*

---

[1] Moreover, this Court may defer consideration of the amount of fees and costs to be awarded until the litigation has progressed and the record made as to the relevance of defense counsel's prior work.

*Banco Panamericano, Inc.*, 674 F.3d 743, 759 (7th Cir. 2012). The Supreme Court has cautioned that, when attorneys' fees are assessed as a sanction against a party, the fees awarded must be "compensatory, rather than punitive in nature … [and] may go no further than to redress the wronged party 'for losses sustained'." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017) (internal citations omitted).

Defendant has not met its burden. Rather than itemize which work previously performed is or is not useful in the present action, Defendant impermissibly seeks to recoup **all** of its fees purportedly incurred "in litigating the New York Action."[2] Petition at 2. As set forth in greater detail below, this includes (a) time that must have been spent analyzing the regulatory framework governing yogurt and yogurt-covered products (which can obviously be re-reused, but is completely non-itemized in Defendant's billing entries), (b) time an associate spent analyzing a "sample motion to dismiss," (which education should prove useful in any subsequent motion practice in which the associate was engaged), (c) time spent researching Article III standing issues (which did not even make it into the filed motion to dismiss), (d) time spent "researching New York state case law re false advertising claims for health-related advertising"

---

[2] While Sean Suber represents that he has redacted "work that cannot be reused in the present action before this Court," (Suber Decl., [ECF 33-1] at ¶ 2), it is entirely unclear whether the redacted entries pertain directly to the New York Action, and if so, what percentage of the total billing for the New York Action the fees sought represent. Notably, the parties had not begun the process of discovery when Plaintiff voluntarily dismissed her case so that she could have sufficient time to amend in light of *McGarity*. It certainly appears that Defendant has included 100% of its fees incurred in preparing its motion to dismiss, its *pro hac vice* applications, and its post-*McGarity* activity. As reflected in the docket in the New York Action, a copy of which is attached as Exhibit A to the Declaration of Catherine Friesen [ECF 21-1], the only other case developments during the relevant time period were that Plaintiff agreed (at Defendant's request) to substitute Pim Brands, Inc. for Welch's Inc. (resulting in the filing of the Amended Complaint on July 19, 2024, and the dismissal of Welch Food, Inc. on July 24, 2024), Defendant agreed to waive service, and the parties submitted a joint motion for waiver of the local counsel requirement. Time and expenses connected to each development (which were all on the consent of all parties) must have been negligible.

3

(which can also be reused in PIM's anticipated motion to dismiss because the near-identical claims under New York General Business Law (GBL) remain), (e) over <u>30 hours</u> spent finalizing, revising, proofreading and cite-checking the draft motion to dismiss, all between the time Mr. Suber finalized a draft of the motion to dismiss on or about August 31, 2024, and it being sent to the client on September 16, 2024 (with virtually no breakdown of the approximately $37,000.00 expenditure as to which sections of the brief or are not useful for PIM's anticipated motion to dismiss), and (f) an additional 15.2 hours ($16,822) spent analyzing and discussing the impact of the *McGarity* decision (which was issued after the Defendant filed its motion to dismiss in the New York case) notwithstanding their direct relevance and utility to understanding the changes made to (and Defendant's defenses to) the complaint filed in the Northern District of Illinois ("Illinois Complaint").

      Notably, in seeking its motion for costs and fees, Defendant represented to this Court that Plaintiffs' changes to the Illinois Complaint [ECF 1] were "superficial" and showed only "minor differences" as compared to the Amended Complaint filed in the New York action ("New York Complaint"), a copy of which is attached as Exhibit A [ECF 13-3] to the Declaration of Sean Suber. (Memorandum of Law in Support of Defendant Pim Brands, Inc.'s, Motion for Costs and Fees ("Motion"), [ECF 13-1], at 6). Defendant went so far as to claim that Plaintiffs "regurgitate the language from the NY Action, as Morris continues to bring NYGBL claims on behalf of putative NY subclass, with Soto now bringing claims under the Illinois Consumer Fraud Act ("ICFA") on behalf of a putative Illinois subclass." (Motion at 6). In support of its Motion, Defendant submitted a redline comparison of the complaints [ECF 13-8] to prove that the Illinois Complaint is the "same action" as the one brought in New York. *Id*. Now that the Court has granted its motion, Defendant has changed its tune entirely and summarily asserts that "none of

4

[the previous] work [on the motion to dismiss] can be reused" because "Plaintiff's allegations have been strategically rewritten to undercut nearly every argument PIM made in its motion to dismiss the New York Action." (Petition at 3). Defendant's cynical reversal (which only underscores the merits of the Plaintiffs' Illinois Complaint) represents a blatant attempt to avoid its burden of justifying the fees requested in the hope that this Court will impose such a punitively high monetary barrier on Plaintiffs that they abandon these claims: a result that will have a chilling effect on the consumer bar and deprive Plaintiffs of their right to have their proverbial day in court.[3]

For purposes of this response, Plaintiffs address each entry below in chronological order.

**Receipt of Complaint & First Draft of Motion:**

Between June 24, 2024 and August 8, 2024, Defendant's attorneys analyzed the complaint and amended complaint and appeared to research and draft arguments connected to the yogurt standard of identity and New York GBL (false advertising) claims.

| Date | Attorney | Amount | Matter | Hours | Description |
|---|---|---|---|---|---|
| 6/24/2024 | Donato, Heather | $167.00 | 2988710 | 0.2 | Call with L. Connelly re Morris Complaint and drafting of the motion to dismiss |
| 6/26/2024 | Donato, Heather | $334.00 | 2988710 | 0.4 | Communicate with S. Suber re allegations in the Morris Complaint (.1); review and analyze Complaint (.3) |
| 7/1/2024 | Donato, Heather | $83.50 | 2992902 | 0.1 | Communicate with S. Suber re drafting of motion to dismiss |
| 7/1/2024 | Suber, Sean | $506.00 | 2992902 | 0.4 | Correspond with H. Donato re planning for motion to dismiss |
| 7/2/2024 | Donato, Heather | $1,670.00 | 2992902 | 2 | Review and analyze Complaint and sample motion to dismiss (1.3); meet with S. Suber and C. Murphy re drafting of motion to dismiss (.7) |
| 7/2/2024 | Suber, Sean | $885.50 | 2992902 | 0.7 | Meet with C. Murphy and H. Donato re strategy and planning of arguments and drafting of motion to dismiss |
| 7/24/2024 | Suber, Sean | $379.50 | 2992902 | 0.3 | Correspond with H. Donato re motion to dismiss briefing |
| 8/1/2024 | Donato, Heather | $4,592.50 | 2996554 | 5.5 | Research New York case law re standard of identity in false advertising claims; draft motion to dismiss re same |
| 8/5/2024 | Donato, Heather | $83.50 | 2996554 | 0.1 | Communicate with S. Suber re drafting of motion to dismiss |
| 8/5/2024 | Suber, Sean | $3,795.00 | 2996554 | 3 | Edits and revisions to first draft of motion to dismiss |
| 8/7/2024 | Donato, Heather | $584.50 | 2996554 | 0.7 | Call with S. Suber re motion to dismiss |
| 8/7/2024 | Suber, Sean | $1,265.00 | 2996554 | 1 | Prepare for and meet with H. Donato re motion to dismiss brief and next steps for next turn of draft for C. Murphy |
| 8/8/2024 | Suber, Sean | $1,012.00 | 2996554 | 0.8 | Additional edits to motion to dismiss brief following call with H. Donato |

---

[3] It is telling that, while finding that Plaintiffs acted in "bad faith," the Court faulted Defendant – not Plaintiffs – for mischaracterizing the record in the New York Action. Order (ECF 32) at 4, n. 2. It is respectfully submitted that Plaintiff's choice to dismiss the New York Action in light of the post-motion to dismiss *McGarity* decision and refile a new action (which included an Illinois plaintiff who was not a party to the original New York Action) in the Northern District of Illinois simply does not amount to "bad faith" under clear Seventh Circuit precedent. While we recognize and respect the Court's ruling on this issue, Plaintiffs reserve the right to appeal this decision.

Time that Defendant's attorneys spent familiarizing themselves with the yogurt standard of identify, the relevant regulatory framework, and the law governing the New York GBL is clearly relevant and useful to Defendant's anticipated motion to dismiss. The regulation which defines the standard of identity ("SOI") for yogurt (21 CFR § 131.200) is germane to both actions and is expressly referenced in both the New York Complaint (¶ 26) and the Illinois Complaint (¶ 29). While the Illinois Complaint also references another relevant FDA publication at paragraph 30 (specifically, a rule published at 86 Fed. Reg. 31124 (June 11, 2021)), that provision also incorporates 21 CFR § 131.200, requiring that when yogurt is used as part of a product name (as it is with *Fruit 'n Yogurt Snacks*), it must contain an ingredient that is or is "derived from yogurt that complies with 131.200." (Illinois Complaint, ¶ 30). Moreover, Defendant researched this specific rule prior to submitting its Memorandum of Law in Support of its Motion to Dismiss the New York Complaint ("Motion to Dismiss," ECF 13-4) and made references to it and arguments based on it at pages 1, 8, 9 and 20 of the Motion to Dismiss, which research and analysis will be plainly useful to its anticipated motion. Because the regulatory framework undergirding both complaints is the same, all of the original research into it and analysis of it is useful to Defendant now.

Similarly, the New York GBL claims remain intact. As shown by the table of contents of the Motion to Dismiss [ECF 13-4], over half of Defendant's brief was devoted to arguing that Plaintiff's GBL claims should be dismissed under applicable New York law. Defendant argued that Plaintiff's price premium theory of injury was legally insufficient (Motion to Dismiss at 13-16) and that Plaintiff's claims are implausible because no reasonable consumer would expect that the yogurt on fruit snacks contained yogurt, as opposed to yogurt powder. (Motion to Dismiss at 16-23). Because the Court will have to apply New York law to the New York claims, and the

6

GBL claims (pled as the First and Second Causes of Action in the New York Complaint at ¶¶ 39-57 and the Second and Third Causes of Action in the Illinois Complaint at ¶¶ 73-91) remain virtually unchanged (as amply demonstrated by the Defendant's redline of the two complaints), the same law and the same analysis can be copied verbatim into a new memorandum of law.[4] In light of the foregoing, Defendant's claim that "Plaintiff's allegations have been strategically rewritten to undercut nearly every argument PIM made in its motion to dismiss the New York action" (Petition at 3) is clear hyperbole and inadequate to support an award of fees.[5]

For this reason, the Court should not award any fees connected to these time entries.

**Drafting of Specific Sections**

Between August 9, 2024, and August 31, 2024, it appears that the attorneys then assigned to the case (the partner, Mr. Suber, and the associate, Ms. Donato, in consultation with a second

---

[4] For example, paragraph 41 of the New York Complaint states: "By labeling, packaging, advertising, marketing, distributing, and/or selling each Class Product to Plaintiff and the other Class members with false and misleading claims that the Class Product **contained "creamy yogurt"** as set forth above, Defendants engaged in, and continue to engage in, deceptive acts and practices." The corresponding paragraph 71 of the Illinois Complaint similarly states: "By labeling, packaging, advertising, marketing, distributing, and/or selling each Class Product to Plaintiff and the other Class members with false and misleading claims that the Class Product **contained or was derived from "yogurt" (in some form)** as set forth above, Defendant engaged in, and continues to engage in, deceptive acts and practices." The only differences between the clauses are contained in the bolded language.

[5] Defendant's footnote on page 2 of the Petition arguing otherwise makes no sense, especially its contention that allegations related to live, active cultures "were absent from Plaintiff Morris's complaint in the New York action." Paragraphs 28 of both the New York Complaint [ECF 13-3] and the Illinois Complaint [ECF 1] reference the absence of live cultures from the manufacture of the Product. It was – and remains - a central allegation. The primary difference is the specific focus of the Illinois Complaint on the absence of those live, active cultures from the manufacture of the *yogurt coating*, including the yogurt powder, and the qualification that reasonable consumers expect the Product to contain yogurt *in some form*, which the Product does not. (*See, e.g.,* Illinois Complaint, ¶¶ 5, 8, 27-30, 34). Defendant does not explain how these more focused and nuanced allegations (which demonstrate, as set forth in ¶ 31 of the Illinois Complaint, how Plaintiffs' claims are not preempted by federal law) render all its previous research into and analysis of the NY GBL irrelevant, when they plainly do not.

7

partner, Amanda Groves) took a more comprehensive dive into the law of certain anticipated arguments and prepared a revised draft.

| Date | Timekeeper | Amount | Matter | Hours | Description |
|---|---|---|---|---|---|
| 8/9/2024 | Suber, Sean | $632.50 | 2996554 | 0.5 | Legal research re standing for motion to dismiss argument |
| 8/12/2024 | Donato, Heather | $334.00 | 2996554 | 0.4 | Communicate with S. Suber re drafting motion to dismiss and deadlines re same |
| 8/12/2024 | Suber, Sean | $3,036.00 | 2996554 | 2.4 | Legal research and update to motion to dismiss re introduction and background; correspond with A. Dale and A. Groves re call with client re next steps |
| 8/15/2024 | Suber, Sean | $1,644.50 | 2996554 | 1.3 | Correspond with A. Groves re case strategy and next steps; additional legal research re motion to dismiss |
| 8/19/2024 | Suber, Sean | $5,060.00 | 2996554 | 4 | Draft of, and legal research for, sections of preemption in motion to dismiss |
| 8/20/2024 | Suber, Sean | $5,692.50 | 2996554 | 4.5 | Draft of, and legal research for, sections regarding lack of Article III standing for motion to dismiss |
| 8/21/2024 | Suber, Sean | $3,921.50 | 2996554 | 3.1 | Draft of, and legal research for, sections re failure to state a claim in motion to dismiss |
| 8/22/2024 | Donato, Heather | $83.50 | 2996554 | 0.1 | Call with L. Connelly re revisions to motion to dismiss |
| 8/22/2024 | Suber, Sean | $5,186.50 | 2996554 | 4.1 | Finalize draft of motion to dismiss; edit revise and get within page limits; circulate draft to team for proofing and review |
| 8/29/2024 | Donato, Heather | $1,252.50 | 2996554 | 1.5 | Call with S. Suber re motion to dismiss; proof and cite check draft motion to dismiss |
| 8/29/2024 | Suber, Sean | $253.00 | 2996554 | 0.2 | Correspond with H. Donato re motion to dismiss revisions; cite check |
| 8/30/2024 | Donato, Heather | $3,089.50 | 2996554 | 3.7 | Proof and cite check draft motion to dismiss; email S. Suber re same |
| 8/31/2024 | Suber, Sean | $2,530.00 | 2996554 | 2 | Additional edits and revisions to motion to dismiss; circulate to A. Groves for final review before sending to client |

Legal research regarding standing (August 9) was clearly helpful to eliminate it as a basis for challenging the New York Complaint (because it was not raised as a basis for dismissal); such research is plainly still relevant to the anticipated motion because the core allegations supporting Plaintiff Morris's standing to bring this action have not changed. On August 12th, Mr. Suber performed legal research of an unidentified nature (perhaps continuing his standing research), but there is no basis to conclude that either the research or his subsequent correspondence with Ms. Groves on August 15th was not useful to the current action. On August 19th, Mr. Suber spent four hours researching and drafting the preemption section. While Plaintiff acknowledges that a portion of that research (specifically into Second Circuit law) is no longer useful to the anticipated motion, much of Defendant's discussion of express and implied preemption (Motion to Dismiss at 7-13) relies on an analysis of the application of Supreme Court precedent to the yogurt-regulatory regime, an endeavor that remains highly useful to the present action. On August 20th, Mr. Suber spent another 4.5 hours researching and analyzing Article III standing, and as discussed above, that research is also useful to the anticipated motion because

8

the basis for Plaintiff Morris's standing remains the same. On August 21st, Mr. Suber spent 3.1 hours drafting the memorandum's section challenging Plaintiff's failure to state a claim (Motion to Dismiss at 13-23), all of which is useful because, as discussed above, Plaintiff Morris's GBL claims have not changed. On August 22nd, he spent over four hours finalizing a draft of the motion papers and getting it within page limits, an editorial exercise that is especially useful to the anticipated motion here given the 15 page limit set by the Local Rules. Ms. Donato then entered time on two separate days (1.5 hours on August 29th and 3.7 hours on August 30th) spent cite checking the motion, time which may have been double-billed and which is plainly useful to Defendant's anticipated motion. After additional revisions, Mr. Suber then circulated the motion for "final review" by Ms. Groves on August 31st. Again, there is no basis to conclude that the unspecified changes made in this "final review" would not be helpful to its anticipated motion here.

Accordingly, the Court should award at most a modest (if not negligible) portion of the hours Mr. Suber spent researching preemption issues (fairly reflecting the time spent finding Second Circuit cases on the issue) and disregard the remainder of the time entries.

**Finalizing, Cite Checking, Revising and Filing the Motion**

Defendant attorneys' time entries demonstrate that, after finalizing the draft motion to dismiss and sending it for "final review" on August 31st, they thereafter spent another month redoing the initial memorandum of law and conducting additional research with the direct input of Ms. Groves. These time entries are reproduced below.

| Date | Timekeeper | Amount | Matter | Hours | Description |
|---|---|---|---|---|---|
| 9/3/2024 | Suber, Sean | $253.00 | 3003161 | 0.2 | Correspond with client re timing for motion to dismiss; correspond with H. Donato re pro hacs and corporate disclosure statement |
| 9/5/2024 | Groves, Amanda | $2,287.50 | 3003161 | 1.5 | Analyze complaint and initial motion to dismiss draft; provide comments to team re same |
| 9/6/2024 | Donato, Heather | $2,171.00 | 3003161 | 2.6 | Call with A. Groves and S. Suber re revisions to motion to dismiss; revise pro hac vice papers per S. Suber comments; draft proposed order granting pro hac vice; revise notice of motion for pro hac vice papers |
| 9/6/2024 | Suber, Sean | $1,012.00 | 3003161 | 0.8 | Prepare for and attend call with A. Groves and H. Donato re motion to dismiss |
| 9/7/2024 | Donato, Heather | $4,008.00 | 3003161 | 4.8 | Revise motion to dismiss per A. Groves comments; research New York state case law re false advertising claims for health-related advertising |
| 9/11/2024 | Groves, Amanda | $1,525.00 | 3003161 | 1 | Revise reply brief in support of motion to dismiss |
| 9/11/2024 | Suber, Sean | $3,921.50 | 3003161 | 3.1 | Edits and revisions to next turn of motion to dismiss from H. Donato; finalize turn of draft; circulate to A. Groves with explanations for changes |
| 9/12/2024 | Groves, Amanda | $3,050.00 | 3003161 | 2 | Further revisions and suggestions re argument issues in motion to dismiss |
| 9/12/2024 | Suber, Sean | $632.50 | 3003161 | 0.5 | Analyze next turn of edits from H. Donato |
| 9/13/2024 | Suber, Sean | $3,415.50 | 3003161 | 2.7 | Additional edits and revisions to motion to dismiss implementing edits from A. Groves |
| 9/14/2024 | Suber, Sean | $379.50 | 3003161 | 0.3 | Correspond with A. Groves re next turn of motion to dismiss draft |
| 9/15/2024 | Suber, Sean | $4,680.50 | 3003161 | 3.7 | Analyze articles cited in Plaintiffs' Complaint; circulate contradictions to A. Groves for review; implement additional edits to motion to dismiss following comments from A. Groves; circulate to H. Donate for final proof before sending to client |
| 9/16/2024 | Suber, Sean | $1,138.50 | 3003161 | 0.9 | Implement final edits from H. Donato to motion to dismiss; draft and send email of motion to dismiss to E. Dale |
| 9/17/2024 | Groves, Amanda | $610.00 | 3003161 | 0.4 | Review client edits to reply brief and team emails re same |
| 9/17/2024 | Suber, Sean | $5,692.50 | 3003161 | 4.5 | Additional edits to motion to dismiss implementing feedback from A. Groves |
| 9/18/2024 | Suber, Sean | $1,897.50 | 3003161 | 1.5 | Additional edits to motion to dismiss; circulate clean and track changes version of the brief to client for review |
| 9/22/2024 | Suber, Sean | $379.50 | 3003161 | 0.3 | Correspond with H. Donato re final edits to motion to dismiss |
| 9/23/2024 | Suber, Sean | $885.50 | 3003161 | 0.7 | Oversee filing of motion to dismiss; correspond with client re filing of motion to dismiss; correspond with Welch's counsel re filing of motion to dismiss |

As an initial matter, it is unclear from these entries or the Petition why the detailed input of a second partner was a necessary or reasonable expense for a routine motion to dismiss in a consumer class action litigation. In any event, of these entries, it is clear that the time spent by Ms. Donato on September 7th for "research re New York State case law re false advertising for health-related advertising" is useful for the anticipated motion because New York law continues to govern the GBL claims, while it is correspondingly unclear how the time spent by Ms. Groves analyzing the New York complaint and providing comments on September 5th was not useful. Indeed, the fact that Ms. Donato subsequently spent almost 5 additional hours researching the New York GBL after her call with Ms. Groves and Mr. Suber on September 6th suggests that Ms. Groves' comments will be useful to the anticipated motion for the reasons discussed above. Similarly, time spent by Ms. Suber on September 15th reading and analyzing the articles cited in the New York Complaint is useful because substantially the same articles (10 out of 12) are cited again in the Illinois Complaint. Ms. Groves twice bills Pim Brands for contributions to a "reply

10

brief" (September 11 and September 17) which presumably have nothing to do with the moving memorandum at issue here which was not a reply brief and thus may reflect mis-billing. Even if they simply reflect careless billing entries, it is still impossible to discern to which arguments Ms. Groves' edits pertained. As for the remaining entries, they simply fail to meet Defendant's burden that the time reflected is not useful because they also lack specificity regarding which arguments were refined in what manner. As a result, none of these fees should be assessed against Plaintiff.

**Post-McGarity Time Entries**

After Defendant filed its motion to dismiss on September 23, 2024, the court in the Southern District of California issued the *McGarity v. Sun-Maid Growers* decision dismissing a similar action with leave to amend, prompting attorneys for Plaintiff Morris to revisit the complex preemption issues in light of the court's findings in the case.[6] No. 24-cv-00714, 2024 U.S. Dist. LEXIS 179091, at *9 (S.D. Cal. Oct. 1, 2024). Defendant seeks to recoup fees incurred as a result of analyzing the *McGarity* decision and following up with its client about the composition of its yogurt powder, all of which will be useful in its upcoming motion. Specifically, the time entries are as follows:

| Date | Name | Rate | Matter | Hours | Description |
|---|---|---|---|---|---|
| 10/17/2024 | Groves, Amanda | $305.00 | 3005567 | 0.2 | Strategy re amended complaint issues; confer with S. Suber re same |
| 10/17/2024 | Suber, Sean | $1,644.50 | 3005567 | 1.3 | Prepare for and attend call with Plaintiffs' counsel re proposed amendment; discuss the same with A. Groves; present options for proposed amendment to client; analyze email correspondence from Plaintiffs' counsel |

---

[6] The same court subsequently denied a motion to dismiss an amended complaint filed by the plaintiffs in that action finding that the claims as amended were not preempted, further demonstrating, as Plaintiffs previously observed in the Notice of Supplemental Authority filed August 6, 2025 [ECF 30, 30-1], that the preemption issue is nuanced, not clear cut. See *McGarity v. California*, No. 24-cv-0714-BAS-DEB, 2025 U.S. Dist. LEXIS 145410 (S.D. Cal. July 29, 2025).

| Date | Timekeeper | Amount | Matter | Hours | Description |
|---|---|---|---|---|---|
| 10/18/2024 | Donato, Heather | $1,419.50 | 3005567 | 1.7 | Draft memo re California court decision in Sun-Maid yogurt deceptive advertising case |
| 10/18/2024 | Groves, Amanda | $762.50 | 3005567 | 0.5 | Confer with S. Suber re amended complaint strategy; emails with client and opposing counsel re same |
| 10/18/2024 | Suber, Sean | $3,415.50 | 3005567 | 2.7 | Correspond with A. Groves and H. Donato re futility of Plaintiffs' amendment re yogurt powder; correspond and email with Plaintiffs' counsel re the same; analyze H. Donato email memo re amendment re yogurt powder |
| 10/19/2024 | Groves, Amanda | $457.50 | 3005567 | 0.3 | Review preemption research results re potential amendment; emails with team re same |
| 10/21/2024 | Donato, Heather | $3,757.50 | 3005567 | 4.5 | Teleconference with client and S. Suber re California decision in Sun-Maid case and technical questions re PIM's yogurt powder; draft client email re same; call with S. Suber re FDA regulations re production of yogurt powder; communicate with docket re letter responding to Plaintiff's extension request |
| 10/21/2024 | Suber, Sean | $4,048.00 | 3005567 | 3.2 | Analyze Plaintiff's letter brief requesting additional time to amend; draft response re the same; correspond with A. Groves re response; oversee filing of response to Plaintiff's letter brief'; correspond with A. Groves re strategy pushing Plaintiffs' to voluntarily dismiss case; prepare for and attend call with client re form of yogurt in product; update A. Groves on status of call with client re yogurt |
| 10/22/2024 | Suber, Sean | $379.50 | 3005567 | 0.3 | Analyze status of McGarity motion practice; correspond with H. Donato re next steps for summarizing McGarity matter to dissuade Plaintiffs from proceeding with Morris matter |
| 10/23/2024 | Suber, Sean | $632.50 | 3005567 | 0.5 | Analyze notice of voluntary dismissal from Plaintiffs; correspond with A. Groves re impact and next steps; message to client the voluntary dismissal of Morris matter |

Clearly, all of this time is useful to its present anticipated motion. Defendant's discussions with Plaintiff's counsel and its own internal discussions about the *McGarity* decision and Plaintiff's clearly expressed intention to file an amended complaint in light of it (two entries on October 17th), Ms. Donato's analysis of the *McGarity* decision on October 18th, Mr. Suber's subsequent communication with his colleagues (time entry on October 18th) about the yogurt powder used in the product, his and Ms. Donato's communications with their client (time entries on October 21st) pertaining to yogurt powder, and Mr. Suber's own further research into the *McGarity* decision (time entry on October 22nd) will all be useful in this action, because, as Plaintiffs have repeatedly noted, the Illinois complaint, as filed, follows the guidance provided by the *McGarity* decision, and the composition of the Defendant's yogurt powder is squarely at issue in this litigation. (*See* Illinois Complaint at ¶¶ 27-29).

Defendant's attempt to recoup these fees is unsupported by any analysis and should be categorically rejected.

12

**Disbursements & "Costs"**

Finally, Defendant seeks over $7,000 in disbursements as "litigation costs," most of which falls under the category of "Computerized Legal Research."

| Date | Amount | Ref | Description |
|---|---|---|---|
| 7/1/2024 | $105.18 | 2992902 | Computerized Legal Research |
| 8/1/2024 | $2,316.75 | 2996554 | Disbursements & Other Charges |
| 9/1/2025 | $3,863.07 | 3003161 | Computerized Legal Research |
| 10/1/2025 | $787.18 | 3005567 | Computerized Legal Research |
| | $7,072.18 | | |

As noted above, all of the Defendant's legal research as to the regulatory framework, Article III standing and the GBL will be useful in the anticipated motion, and much of its preemption research (to the extent it analyzed Supreme Court precedent) will also continue to be useful. Even the Second Circuit research holds some value as persuasive authority. Based on the table of authorities of the Motion to Dismiss, only 16 out of the 66 cases cited in the memorandum (24%) are Second Circuit preemption cases rendered arguably useless in the anticipated motion. In any event, without a detailed breakdown of the research itself (or explanation as to what the "other charges" of August 1st pertain), Defendant fails to meet its burden of demonstrating that the fees incurred will not be useful in its anticipated motion and the request for disbursements should be denied.[7]

For all these reasons, Defendant's opportunistic overreach should be denied in its entirety. To the extent the Court is inclined to award fees nonetheless, the award should be limited to, at most, a portion of the four hours Mr. Suber spent researching preemption issues,

---

[7] The disbursement are not recoverable as costs, which, pursuant to 28 U.S.C. § 1920 are limited to 1) Fees of the clerk and marshal; 2. Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; 3. Fees and disbursements for printing and witnesses; 4. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; 5. Docket fees under section 1923 of this title; and 6. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

fairly reflecting the time spent finding Second Circuit cases on the issue, and the remainder of the fees should be denied.

## CONCLUSION

For these reasons, the Petition should be denied in its entirety.

Dated: October 15, 2025  
       White Plains, New York

Respectfully submitted,

**DENLEA & CARTON LLP**

By:    */s/ Catherine H. Friesen*
Jeffrey I. Carton (*pro hac vice*)
Catherine H. Friesen (*pro hac vice*)
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105
jcarton@denleacarton.com
cfriesen@denleacarton.com

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr. Ste. 2400
Chicago, Illinois 60606
Tel. No.: (312) 741-1019
beth@feganscott.com

*Attorneys for Plaintiffs*