UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLENE MORRIS and RAMON SOTO, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>PIM BRANDS, INC.,<br><br>     Defendant. | Case No.: 1:25-cv-00405<br><br>Hon. Andrea R. Wood<br><br>Magistrate Judge Jeannice W. Appenteng |

**DEFENDANT PIM BRANDS, INC.'S REPLY
IN SUPPORT OF ITS PETITION FOR ATTORNEYS' FEES AND COSTS**

  In granting PIM's Rule 41(d) Motion, the Court found that "Plaintiffs' conduct supports an award of attorneys' fees" because "Plaintiffs sought to gain a tactical advantage by voluntarily dismissing the New York Action and bringing a nearly identical action in this Court." Doc. 32 at 4. The order continued: "Plaintiffs needlessly prolonged the litigation between the parties and inflicted unnecessary costs on PIM . . . thereby engaging in bad faith." *Id.* On these findings, the Court deemed it "appropriate to award costs and attorneys' fees to PIM in connection with the New York Action." *Id.* In short, this Court has already unequivocally determined that PIM is entitled to costs and fees. The determination of how much "should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

  Defying this ruling, Plaintiffs ask that PIM be awarded $0 and that PIM's Fee Petition be denied "in its entirety." Opp. at 14.[1] But Plaintiffs offer no reason for this Court to double-back on its order, which it issued with full briefing, a complete record, and months of consideration.

---

[1] The Opposition to Defendant's Petition for Attorneys' Costs and Fees is hereinafter cited as "Opp. at #."

Each of Plaintiffs' arguments can be easily rejected. ***First***, the record objectively contradicts Plaintiffs' unsupported contentions that PIM failed to itemize its work from the New York Action and that PIM seeks "all of its fees" from that litigation. Opp. at 2–3. The Court's review of PIM's heavily redacted billing records from the New York Action will demonstrate that both contentions are unfounded. ***Second***, Plaintiffs argue that all work or research that counsel performed under New York Law can be reused in this case. But as PIM has explained multiple times, and Plaintiffs have conceded, the "tactical advantage" Plaintiffs gained from dismissing and refiling here was that it drafted a new complaint that renders that prior work and research moot. Plaintiffs' position that all of counsel's prior research, calls, and work product can be reused simply cannot be reconciled with the facts. ***Lastly***, Plaintiffs arbitrarily declare that the hours counsel spent on the motion to dismiss are unreasonable, yet they offer no measure against which reasonableness can be determined. Nonetheless, this Court need not make an actuarial assessment of PIM's fees, and counsel's 89.7 hours spent on a motion to dismiss are notably efficient, in any event.

Thus, as detailed below, the Court should award PIM's requested fees, as they are limited to work from the New York Action that counsel cannot reuse. If this Court has questions about any fee line item after this briefing, counsel is available to be heard at the Court's convenience.

## ARGUMENT

### I. PIM's Petition Is Proper.

PIM's Fee Petition and exhibits include all the information needed to award fees. Thus, the Court should ignore the many spurious arguments (unsupported by any law) Plaintiffs advance in their opposition.

To start, Plaintiffs' assertion that PIM failed to "itemize" its fees from the New York Action is demonstrably incorrect. *See* Opp. at 3. Along with the Petition itself, PIM submitted five

contemporaneously kept billing records that were delivered to PIM and included the billing entries for each attorney who worked on the New York Action. *See* Doc. 33-2 to 33-6. These records show the date the work was done, the attorney's name, the time spent (in tenths of hours), and a description of the work completed. That is all the itemization that PIM required of counsel for it to pay these invoices, and all the itemization that is required under the law. *See Sorresso v. Selcke*, 1990 WL 70846, at *2 (N.D. Ill. May 8, 1990) (finding that "[d]etail of each minute expended is not necessary, but a general description of the subject matter involved is required" and that "records indicating time spent in tenths of hours and the activities on which it was spent are ordinarily sufficient."); *Magin v. Monsanto Co.*, 2005 WL 2171175, at *4 (N.D. Ill. Sep. 1, 2005) ("A court should not require any more level of detail or itemization in the plaintiff's billings than the level of detail paying clients find satisfactory.") (citation omitted).

Of course, counsel "has the burden of documenting and supporting the reasonableness of the time expenditures for which compensation is sought," which it did, but counsel was not, and is "**not** required to record in great detail how each minute of his time was expended" to placate the party who must pay fees. *See United States v. Tarkowski*, 2002 WL 460831, at *1 (N.D. Ill. Mar. 25, 2002) (emphasis added). Thus, though Plaintiffs quibble and complain that PIM did not itemize tasks to Plaintiffs' standards when describing how, for example, PIM's counsel "analyz[ed] the regulatory framework governing yogurt and yogurt-covered products" (Opp. at 3), under the law and actual legal standard, counsel's itemization is sufficient.

Plaintiffs also incorrectly argue that PIM's fees are not justified because Plaintiffs say PIM "seeks to recoup **all** of its fees purportedly incurred in litigating the New York Action." Opp. at 3 (emphasis in original). But this is also demonstrably incorrect. The Court can confirm that PIM is not seeking all of its New York Action fees by reviewing PIM's redacted billing records. *See* Doc.

33-2 to 33-6. Counsel reviewed each billing entry on each invoice to determine which activities from the New York Action were performed to advance the motion to dismiss. In doing so, counsel conservatively redacted and excluded from its calculation any work not obviously relevant to the motion to dismiss. During this process, counsel redacted and excluded 14 of the 16 entries in Exhibit 1; 19 of 24 entries in Exhibit 2; 3 of 22 entries in Exhibit 3; 16 of 34 entries in Exhibit 4; and 16 of 27 entries in Exhibit 5. *See id*.

All told, counsel redacted, excluded, and is not seeking to recoup payment for 67 of 123 (or 55%) of the billing entries for work counsel performed in litigating the New York Action. This in itself belies Plaintiffs' assertion that PIM "seeks to recoup **all** of its fees purportedly incurred in litigating the New York Action." Opp. at 3 (emphasis in original). And for additional evidence that PIM's Petition is properly limited, the Court can compare counsel's requested fees of $88,626.00 with the $121,246.16 sum of the combined invoices—a $32,620.16 difference.

Plaintiffs' arguments in this respect are troubling because Plaintiffs' counsel should *know* that the entries being submitted do not make up the entirety of the work that was done in the New York Action. For example, in addition to briefing the motion to dismiss, the parties also *jointly* negotiated dropping Welch's from the New York Action and the filing of an Amended Complaint, and negotiated and submitted the waiver of the local counsel requirement in the New York Action. *See Morris v. PIM Brands, Inc.*, No. 6:24-cv-06385 (W.D.N.Y) ("*NY Action*"), Docs. 5, 6, 9, 21, 22. Even so, as is obvious from the Fee Petition, PIM is not seeking to recoup fees for any of that work. Indeed, Plaintiffs' counsel *acknowledges this fact*, but still inexplicably says they are "entirely unclear whether the redacted entries pertain directly to the New York Action" because they just assume PIM's work "must have been negligible." Opp. at 3 n.2. This is wrong and underscores the speculative nature of the complaints in Plaintiffs' opposition. Several of the

redacted entries related to work for which Plaintiffs *know* PIM is not seeking reimbursement. The remainder of the redactions reflect work performed by a partner who left the firm during the briefing and by a paralegal, all of which PIM excluded from the Fee Petition precisely to ensure that PIM is not seeking a windfall.

In sum, the notion that PIM somehow seeks all of its fees from the New York action is an incorrect and unsupported representation. PIM has limited its Petition to necessary fees as required by this Court, and it has otherwise properly supported its Petition.

## II. PIM's Fees Are Reasonable.

Plaintiffs' arguments about the reasonableness of PIM's fees seek to put an unnecessary, unrealistic, and legally unsupported burden on the Court to review and second-guess PIM's entries en masse based on Plaintiffs' subjective claim that the fees are unfair. That is not how this works.

The Seventh Circuit has explained that it "is generally unrealistic to expect a trial court to evaluate and rule on every entry in an application." *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986). Even so, Plaintiffs ask this Court to do a general audit of all of PIM's billing entries for reasonableness—without offering any legal standard to determine what's reasonable. In fact, it appears the only standard Plaintiffs apply is their own. But that is not the standard.

"In deciding what if any deduction [the court] should make," the Seventh Circuit has explained that courts "should of course be guided by the Supreme Court's recent decision in *Hensley v. Eckerhart*, 461 U.S. 424 (1983)." *Id.* Yet noticeably, because they are applying their own standard, Plaintiffs do not mention *Hensley* once. Instead, they just make an across-the-board attack on the Fee Petition, seeking to relitigate the award of fees in their entirety. This is improper because "*Hensley* makes clear that a fee petition ought not be the occasion for a trial within a trial,"

given a serious "concern for efficiency and ease of judicial administration." *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 647 (7th Cir. 1995).

Plaintiffs' approach conflicts with *Hensley*. They seek to relitigate already-decided issues in the most inefficient way possible by asking the Court to improperly "'eyeball' the fee request and 'cut it down by an arbitrary percentage because it seemed excessive'" based on Plaintiffs' say-so, which is not permitted. *See id.* (citation omitted).

The Court should reject this request outright because, by the *objective* metrics this Court can evaluate—hours spent and rates—PIM's fees are reasonable.

**Hours spent:** Counsel reasonably requests fees for a total of 89.7 hours of work on the motion to dismiss in the New York Action. Comparable hours have been approved time and again in this District. *See Apollo Petro. Sols., LLC v. Nano Gas Techs., Inc.*, 2022 WL 3584621, at *3 (N.D. Ill. May 3, 2022) (finding that "none of the hours worked by the attorneys in this case were excessive, redundant, or otherwise unnecessary" where "attorneys spent 246.2 hours . . . mainly [] researching and drafting a motion to dismiss, a motion for attorney's fees, and working on the appeal."); *Sonrai Sys., LLC v. Romano*, 2022 WL 4551893, at *7 (N.D. Ill. Sep. 29, 2022) (121 hours on a renewed motion for sanctions was reasonable); *Khan v. Hemosphere Inc.*, 2019 WL 10947306, at *1 (N.D. Ill. July 15, 2019) (233.7 hours was reasonable for both a motion to dismiss and a motion for sanctions).

**Rates:** Counsel also reasonably charged PIM a reduced rate in the New York Action. Plaintiffs do not challenge these rates; nor could they, as the fees are also clearly reasonable since PIM negotiated and paid them. *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008) ("[T]he best evidence of whether attorney's fees are reasonable is whether a party has paid them.").

Thus, without spending copious hours poring over the record, the Court is within its right to align with its prior ruling that fees are appropriate because Plaintiffs acted in bad faith and forced PIM to incur unnecessary fees. Indeed, the Supreme Court has made clear that the goal of shifting fees "is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838. Thus, the Court "may take into account [its] overall sense of [the] suit" without engaging in the unnecessary actuarial exercise requested by Plaintiffs. *Id.*

### III. PIM's Prior Arguments Are Not Reusable.

Finally, as PIM has explained, the fees being sought are for work that is not reusable here. Plaintiffs' position that 100% of the prior work is reusable cannot be squared with the facts.

PIM has explained in its Rule 41(d) Motion and its Fee Petition that PIM's counsel cannot reuse the work it completed litigating the New York Action. *See* Doc. 23 at 9 & n.2; Doc. 33 at 2–4. Indeed, Plaintiffs' *entire* purpose for dismissing the New York action and filing it anew here was to prevent PIM from relying on the arguments and Second Circuit authority (particularly on preemption) that it advanced during that case. Plaintiffs admit as much with respect to the preemption issue, and the Court has *already ruled on this question* when sanctioning Plaintiffs' "bad faith" conduct. *See* Doc. 32 (quoting Doc. 20 at 3) ("As Plaintiffs acknowledge, the *McGarity* decision spoke to the preemption issue flagged by PIM's motion to dismiss and 'thus provided a significant roadmap to an amendment that would avoid the potential preemption pitfall identified by PIM.'"). Because Plaintiffs did, in fact, fashion their new allegations to "avoid the preemption pitfall" PIM outlined in its original motion to dismiss, PIM must now argue a different preemption theory under different law, so the original research and work product cannot be reused.

Further, PIM cannot reuse its work formulating arguments around the regulatory framework that controls this case. The reason why is also a key reason we are litigating before this

Court. In the New York Action, Plaintiff Morris alleged that PIM's product was deceptive because it falsely purported to comply with the FDA's standard of identity for *standard* yogurt products under 21 C.F.R. § 131.200. *See NY Action*, Doc. 5, Am. Compl. ¶¶ 4, 26. Counsel researched this issue extensively and convincingly argued that PIM's snacks are *nonstandard* yogurt products not bound by Section 131.200. PIM spent many hours not just "familiarizing themselves" with FDA regulations, as Plaintiffs say, but also researching how New York courts apply these regulations. *See* Opp. at 5 (8/1/2024 entry). This work was wasted when Morris dismissed and refiled here, instead arguing that PIM's product need not comply with Section 131.200 but, as a *nonstandard* product, must derive from an ingredient that does comply with the provision. This is an entirely different theory. Plaintiffs attempt to hide the ball here by tacitly conceding that "the Illinois Complaint also references another relevant FDA publication" when, in truth, this publication is the foundation of Plaintiffs' case and is the basis on which Plaintiffs now attempt to avoid PIM's original arguments. Irrespective of its "familiarity" with the regulatory framework, PIM must now research anew how Seventh Circuit and Illinois federal courts have addressed the issue.

Lastly, with respect to Plaintiffs' New York law claims, "the same law and the same analysis" cannot be "copied verbatim into a new memorandum of law." Opp. at 7. On its face, this suggestion that PIM should present Your Honor with arguments "verbatim" from another jurisdiction is a non-starter. After all, Your Honor has noted elsewhere that citing authority that "is not binding on this Court" and is "distinguishable from the present situation" is unavailing. *See Ayyash v. Horizon Freight Sys., Inc.*, 2018 WL 5994755 (N.D. Ill. Nov. 15, 2018). And that is the situation here: those New York cases are not binding on this Court and the new factual allegations of Plaintiffs' latest position—claiming that Plaintiffs are supposedly relying on a "standard" definition of yogurt (whatever that means)—makes this case distinguishable from the New York

Action where Plaintiff was relying on the FDA's definition of yogurt. This is why, among other reasons, PIM explained at the October 22 hearing that PIM cannot—and does not plan to—reuse research, case law, or arguments from its original motion to dismiss. These federal cases took precedence in PIM's briefing because counsel understands that New York federal court interpretations of New York state law would have aided Judge Geraci, Jr., in adjudicating the motion to dismiss on *those* facts more than just the state law alone.

PIM is entitled to approach—and will approach—the upcoming briefing in a reasoned, cautious manner that will present these issues efficiently for Your Honor. Plaintiffs' desire to be the barometer of what is reusable has no basis in law—just as their entirely unsupported claim that "this Court may defer consideration of the amount of fees and costs until the litigation has progressed and the record made as to the relevance of defense counsel's prior work." Doc. 41 at 2 n.1. Plaintiffs cite no authority to support any of their arguments that this Court should defer the award until the end of the motion to dismiss briefing so that they can cherry-pick which elements of the law cited in the motion to dismiss from the New York action were reusable in a motion to dismiss before this Court. That approach is flatly inconsistent with the practice in this Circuit, which typically sees the fees paid *before* anything proceeds. *See Tsukerman v. W. Cmty. Unit Sch. Dist. No. 12*, 796 F. App'x 312, 312 (7th Cir. 2020) (affirming judgment where a district court stayed the proceedings until the plaintiff paid the defendant's expenses from prior litigation and, when he did not pay, dismissed the case for want of prosecution); *MSP Recovery Claims, Series 44, LLC v. Zurich Am. Ins. Co.*, 2024 WL 1514133, at *3 (N.D. Ill. Mar. 25, 2024) (Seeger, J.) (staying case pending the payment of fees).

At the end of the day, the previously researched Second Circuit case law will not enlighten the Court on how Illinois federal courts apply preemption, have read and applied New York law,

or address the reasonable consumer standard. Counsel must do research in this regard for Your Honor from scratch. Thus, even if the Court believes counsel can rely on some of its prior work to *inform* its upcoming briefing, the hours spent crafting the briefing and building the arguments will need to be spent again. So, consistent with the Court's order, an award of fees and costs is appropriate. There is no need to adjudicate this issue yet again.

## CONCLUSION

The Court should award the costs and fees in PIM's Fee Petition in their entirety.

Dated: November 5, 2025
Chicago, Illinois

Respectfully submitted,

By: */s/ Sean H. Suber*
Sean H. Suber
Tyree Petty-Williams
WINSTON & STRAWN LLP
300 N. La Salle Dr.
Chicago, IL 60654
(312) 558-5600
SSuber@winston.com
TPettyWilliams@winston.com

Amanda L. Groves*
Katelyn Taira[+]
WINSTON & STRAWN LLP
333 South Grand Avenue
38th Floor
Los Angeles, CA 90071-1543
(216) 615-1700
AGroves@winston.com
KTaira@winston.com

*Counsel for Defendant PIM Brands, Inc.*

*Admitted Pro Hac Vice
[+] Pro Hac Vice Forthcoming

– 10 –

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of November, 2025, I caused the attached copy of the foregoing to be served on the following persons by electronic case filing:

> Elizabeth A. Fegan
> Megan E. Shannon
> **Fegan Scott LLC**
> 150 S. Wacker Dr.,
> 24th Floor
> Chicago, IL 60606
> beth@feganscott.com
> megan@feganscott.com
> (312) 741-1019

*Attorney for Plaintiffs Charlene Morris and Ramon Soto*

/s/ *Sean H. Suber*
*Attorney for Defendant*
