**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CHARLENE MORRIS and RAMON SOTO,

individually and on behalf of all others
similarly situated,

          Plaintiffs,

   v.

PIM BRANDS, INC.,

          Defendant.

Case No.: 1:25-cv-00405

Hon. Andrea R. Wood

Magistrate Judge Jeannice W. Appenteng

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT PIM BRANDS, INC.'S MOTION TO DISMISS**
**<u>PLAINTIFFS' CLASS ACTION COMPLAINT</u>**

Amanda L. Groves*
Katelyn Taira[+]
WINSTON & STRAWN LLP
333 S. Grand Ave.
38th Floor
Los Angeles, CA 90071-1543
(216) 615-1851
AGroves@winston.com
KTaira@winston.com

Sean H. Suber
Tyree Petty-Williams
WINSTON & STRAWN LLP
300 N. LaSalle Dr.
Suite 4400
Chicago, IL 60601-9703
(312) 558-7436
SSuber@winston.com
TPettyWilliams@winston.com

*Counsel for Defendant PIM Brands, Inc.*

*Admitted Pro Hac Vice
[+] Pro Hac Vice Forthcoming

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD ......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

    I.    Plaintiffs' Claims Are Preempted by Federal Law. ................................................. 6

        A.    The Claims Are Impliedly Preempted ........................................................ 6

        B.    The Claims Are Expressly Preempted. ..................................................... 10

            1.    PIM does not violate the FDCA by using "yogurt" on the Products. ................................................................................................. 10

            2.    PIM does not need to list "live active cultures" in the ingredients list ................................................................................................. 15

    II.    PIM's Conduct Is Protected by Illinois's and New York's Safe-Harbor Provisions. ................................................................................................................. 18

        A.    The ICFA Bars Plaintiffs' Claims ............................................................ 18

        B.    The NYGBL Also Bars Plaintiffs' Claims. .............................................. 18

    III.    Plaintiffs' Consumer Protection Claims Are Inadequately Pleaded and Implausible ........................................................................................................... 19

        A.    Plaintiffs Fail to Allege What a Reasonable Consumer Believes. ............ 19

        B.    PIM's Label Is Not Misleading. ............................................................... 21

        C.    Plaintiffs Fail to Allege a Viable Injury. .................................................. 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allis-Chalmers Corp. v. Lueck,*
  471 U.S. 202 (1985) ......................................................................................8

*Arizona v. United States,*
  567 U.S. 387400 (2012) ................................................................................6

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................. 6, 20

*Auer v. Robbins,*
  519 U.S. 452 (1997) ................................................................................15, 16

*Barnes v. Unilever United States Inc.,*
  2023 WL 2456385 (N.D. Ill. Mar. 1l, 2023)................................................ 17

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...................................................................................5, 6

*Bell v. Pub. Super Mkts. Inc.,*
  982 F.3d 468 (7th Cir. 2020) ................................................................. *passim*

*Bober v. Glaxo Wellcome PLC,*
  246 F.3d 934 (7th Cir. 2001)........................................................................ 18

*Bourbia v. S.C. Johnson & Son, Inc.,*
  375 F. Supp. 3d 454 (S.D.N.Y. 2019) ......................................................... 18

*Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341 (2001) ............................. 1, 6, 7

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
  761 F.3d 732 (7th Cir. 2014)........................................................................25

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
  467 U.S. 837 (1984)...................................................................................... 16

*Colella v. Atkins Nutritionals, Inc.,*
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) ......................................................... 19

*Duke v. Am. Med. Sys., Inc.,*
  1995 WL 505472 (N.D. Ill. Aug. 18, 1995) ................................................. 10

*Eitmann v. New Orleans Pub. Serv., Inc.,*
  730 F.2d 359 (5th Cir. 1984) .........................................................................9

*Franco v. Chobani, LLC,*
    789 F. Supp. 3d 584 (N.D. Ill. 2025) ........................................................................ 17

*Frye v. L'Oreal USA, Inc.,*
    583 F. Supp. 2d 954 (N.D. Ill. 2008) ........................................................................ 25

*FTC v. Credit Bureau Ctr., LLC,*
    325 F. Supp. 3d 852 (N.D. Ill. 2018) ........................................................................ 21

*Garcia v. Garland,*
    64 F.4th 62 (2d Cir. 2023) ........................................................................................ 16

*Gibson v. AT & T Techs., Inc.,*
    782 F.2d 686 (7th Cir. 1986) ...................................................................................... 8

*Hauger v. Dollar Gen. Corp.,*
    2022 WL 2532487 (C.D. Ill. July 7, 2022) .............................................................. 24

*Hoagland v. Town of Clear Lake,*
    415 F.3d 693 (7th Cir. 2005) ...................................................................................... 6

*Karlinski v. Costco Wholesale Corp.,*
    616 F. Supp. 3d 753 (N.D. Ill. 2022) ...................................................................... 20

*Kisor v. Wilkie,*
    588 U.S. 558 (2019) ........................................................................................... 15, 16

*Kurns v. A.W. Chesterton Inc.,*
    620 F.3d 392 (3d Cir. 2010) ...................................................................................... 8

*Law v. Gen. Motors Corp.,*
    114 F.3d 908 (9th Cir. 1997) ...................................................................................... 9

*Lederman v. Hershey Co.,*
    2022 WL 3573034 (N.D. Ill. Aug. 19, 2022) ..................................................... 21, 23

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024) .................................................................................................. 16

*Matthews v. Polar Corp.,*
    2023 WL 4534543 (N.D. Ill. Mar. 22, 2023) .......................................................... 20

*McGarity v. Sun-Maid Growers of Cal.,*
    --- F. Supp. 3d ----, 2025 WL 2146857 (S.D. Cal. July 29, 2025) .......................... 14

*McGarity v. Sun-Maid Growers of Cal.,*
    2024 WL 4370578 (S.D. Cal. Oct. 1, 2024) ............................................................ 14

*Nemphos v. Nestle Waters N. Am., Inc.*,
    775 F.3d 616 (4th Cir. 2015) ................................................................................... 15

*Novotney v. Walgreen Co.*,
    683 F. Supp. 3d 785 (N.D. Ill. 2023) ...................................................................... 15

*Oglesby v. Del. & Hudson Ry. Co.*,
    180 F.3d 458 (2d Cir. 1999) ....................................................................................... 9

*Parker v. Stryker Corp.*,
    584 F. Supp. 2d 1298 (D. Colo. 2008) ..................................................................... 8

*Perez v. Nidek Co.*,
    657 F. Supp. 2d 1156 (S.D. Cal. 2009) .................................................................... 8

*Phila. Indem. Ins. Co. v. Bellin Mem'l Hosp.*,
    126 F.4th 532 (7th Cir. 2025) ................................................................................. 22

*Pichardo v. Only What You Need, Inc.*,
    2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) .................................................. 12, 21

*Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*,
    699 F.3d 962 (7th Cir. 2012) .................................................................................... 6

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011) ................................................................................................ 16

*Preira v. Bancorp Bank*,
    885 F. Supp. 2d 672 (S.D.N.Y. 2012) .................................................................... 25

*Regan v. Sioux Honey Ass'n Coop.*,
    921 F. Supp. 2d 938 (E.D. Wis. 2013) ..................................................................... 8

*Reinitz v. Kellogg Sales Co.*,
    2022 WL 1813891 (C.D. Ill. June 2, 2022) ........................................................... 23

*Rikos v. Procter & Gamble Co.*,
    782 F. Supp. 2d 522 (S.D. Ohio 2011) .................................................................... 8

*Slowinski v. BlueTriton Brands, Inc.*,
    744 F. Supp. 3d 867 (N.D. Ill. 2024) ............................................................. *passim*

*Sneed v. Ferrero U.S.A., Inc.*,
    656 F. Supp. 3d 777 (N.D. Ill. 2023) ..................................................................... 24

*Sorkin v. Kroger Co.*,
    2024 WL 3673719 (N.D. Ill. Aug. 6, 2024) ........................................................... 21

*Steele v. Wegmans Food Mkts. Inc.*,
    472 F. Supp. 3d 47 (S.D.N.Y. 2020) ................................................................. 24

*Stemm v. Tootsie Roll Indus., Inc.*,
    374 F. Supp. 3d 734 (N.D. Ill. 2019) ............................................................... 24

*Terwilliger v. Greyhound Lines, Inc.*,
    882 F.2d 1033 (6th Cir. 1989) ........................................................................... 8

*Turek v. Gen. Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011) ............................................................... 14, 17, 18

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021) ............................................................. 20

*Vanzant v. Hill's Pet Nutrition Inc.*,
    2025 WL 296062 (N.D. Ill. Jan. 24, 2025) ..................................................... 1, 9

*Vincent v. Medtronic, Inc.*,
    221 F. Supp. 3d 1005 (N.D. Ill. 2016) ............................................................. 10

*Wach v. Prairie Farms Dairy, Inc.*,
    2022 WL 1591715 (N.D. Ill. May 19, 2022) ......................................... 20, 21, 23

*Wilson v. Jadamo Corp.*,
    2023 WL 1451530 (N.D. Ill. Feb. 1, 2023) ........................................................ 5

*Wurtzburger v. Ky. Fried Chicken*,
    2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) .................................................. 19

*Zottola v. Eisai Inc.*,
    564 F. Supp. 3d 302 (S.D.N.Y. 2021) ............................................................. 24

**Statutes**

21 U.S.C.S. § 337 ...................................................................................................... 7

21 U.S.C.S. § 343-1 ................................................................................................. 10

21 U.S.C. § 337(a) ................................................................................................. 7, 8

815 Ill. Comp. Stat. § 505/10b(1) ......................................................................... 18

Food, Drug, and Cosmetic Act .......................................................................... *passim*

Illinois Consumer Fraud Act ............................................................................. *passim*

N.Y. Gen. Bus. L. ...................................................................................... 9, 18, 19, 24

N.Y. Gen. Bus. L. § 349 ............................................................................... 5, 8, 19, 25

N.Y. Gen. Bus. L. § 349(d) ......................................................................................... 18

N.Y. Gen. Bus. L. § 350 ............................................................................... 5, 8, 19, 25

N.Y. Gen. Bus. L. § 350(c) ................................................................................... 18, 19

**Other Authorities**

21 C.F.R. § 101.4(b)(2)(i) ...................................................................... 11, 12, 13, 15

21 C.F.R. § 101.4(b)(3) ............................................................................................. 13

21 C.F.R. § 101.4(b)(5) ............................................................................................. 13

21 C.F.R. § 101.4(b)(7) ............................................................................................. 13

21 C.F.R. § 131.200 .................................................................................................. 16

21 C.F.R. § 131.200(a) .......................................................................................... 7, 13

21 C.F.R. § 131.200(b) ............................................................................................. 13

21 C.F.R. § 131.200(c) ............................................................................................. 13

86 Fed. Reg. at 31,117 ................................................................................................ 2

86 Fed. Reg. at 31,118 .............................................................................................. 15

86 Fed. Reg. at 31,122 ................................................................................................ 7

86 Fed. Reg. at 31,123 .............................................................................................. 15

86 Fed. Reg. at 31,124 ........................................................................................ passim

86 Fed. Reg. at 31,127 .............................................................................................. 13

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 5

Megan Ware, *Everything you need to know about yogurt* (Jan. 22, 2024) ................... 13

## INTRODUCTION

This case should be dismissed because it is preempted, is implausible, and fails to state a claim upon which relief can be granted. Consumers cannot usurp the role, expertise, and judgment of the Food and Drug Administration ("FDA") with misguided lawsuits to enforce the Food, Drug, and Cosmetic Act ("FDCA"), by using state law and their own interpretations of the FDA's regulations because such power rests with the FDA—not consumers, the States, or the courts:

> Congress decided who has the power to define terms about food. It isn't the States. It isn't consumers. And it isn't federal courts, either. That power rests with the Food and Drug Administration. It is up to the FDA to define what words mean when it comes to food. And States have no power to impose new requirements, or take any requirements away.

*Slowinski v. BlueTriton Brands, Inc.*, 744 F. Supp. 3d 867, 882 (N.D. Ill. 2024). Indeed, in *Buckman Co. v. Plaintiffs' Legal Committee*, the Supreme Court "held that, because enforcing the FDCA is exclusively the province of the federal government," **(1)** "a private litigant cannot sue a defendant for violating the FDCA" and **(2)** "cannot bring a state-law claim against a defendant when the state-law claim is in substance, if not in form, a claim for violating the FDCA—that is, when the state claim would not exist if the FDCA did not exist." *Vanzant v. Hill's Pet Nutrition Inc.*, 2025 WL 296062, at *6 (N.D. Ill. Jan. 24, 2025) (citing 531 U.S. 341, 349 n.4, 352–53 (2001)).

Even so, Plaintiffs Charlene Morris and Ramon Soto filed this lawsuit attempting to use state laws to challenge the FDCA compliance of Defendant PIM Brands, Inc.'s ("PIM") Welch's® Fruit 'n Yogurt™ Snacks (the "Products"), which are yogurt-coated fruit snacks made with yogurt powder. Plaintiffs bring this action even though all the information about the Products is truthfully disclosed on the packaging, which accurately depicts one of the fruit snacks covered in a hard yogurt coating. As required by the FDCA and FDA, the ingredients list identifies in bold, highlighted letters that the yogurt coating is composed of yogurt powder (made from cultured whey

and nonfat milk). And, also as required by the FDCA and FDA, the nutrition panel on the package informs consumers about the number of calories per serving, the total fat, and a host of other dietary information. But even with these disclosures, Plaintiffs pursue this case and argue that the "label for *Fruit n' Yogurt* snacks is misleading because it suggests to a reasonable consumer that the Product is made from yogurt (in some form), when it is not, and is healthy to consume, when it is not." Doc. 1 ("Compl.") ¶ 34. To Plaintiffs, "not even the so-called 'yogurt powder' is derived from yogurt, as yogurt is defined by the federal regulations[.]" *Id.*

The Court should reject Plaintiffs' clear attempt to usurp the role of the FDA, and this action should be dismissed on three independent grounds:

***First***, the claims are impliedly preempted under *Buckman*. Plaintiffs' theory depends entirely on the FDCA's regulations and the FDA's guidance for regulating yogurt products. Without such regulatory guidance, which Plaintiffs adopt *verbatim*, no state-law claim would exist. And because the alleged misconduct would not give rise to liability under state law in the absence of the FDCA, the claims fall squarely within *Buckman* and should be barred outright.

***Second***, Plaintiffs' claims are expressly preempted. The FDA authorizes the labeling approach at issue for "yogurt-coated" products: It expects manufacturers to use a substance derived from yogurt, and it requires the yogurt-derived ingredients to be disclosed in accordance with the FDCA. *See* 86 Fed. Reg. at 31,117. PIM does that—it indisputably uses and discloses yogurt coating and yogurt powder on the ingredient lists. *See* Compl. ¶ 4. Plaintiffs quibble about *how* the yogurt powder and yogurt coating are disclosed, complaining that the yogurt coating should be phrased differently on the label and that the yogurt coating should disclose live cultures. But in doing so, they seek to impose different, heightened requirements that conflict with FDCA regulations and the FDA's guidance. This is a textbook case of express preemption.

*Third*, the Complaint fails on the merits. Indeed, the state-law consumer protection claims fail because both Illinois and New York provide safe-harbor provisions for conduct authorized by regulators, which is exactly what we have here. Beyond that, the claims fail under the reasonable consumer standard. Plaintiffs do not plead any nonconclusory facts showing how real, reasonable consumers interpret "yogurt" in the context of shelf-stable products, and they do not plead any facts showing why such consumers would expect live cultures or regulatory-grade yogurt in dry, nonrefrigerated, yogurt-coated fruit snacks. Furthermore, even if there were any ambiguity about the nature of the yogurt coating (which there is not), the ingredient list on the back label of the packaging states that the yogurt coating is made with yogurt powder and discloses everything necessary for a consumer to make nutrition decisions about the Products. This precludes claims for deception and injury, because Plaintiffs got exactly what they bargained for. Thus, Plaintiffs fail to state a claim upon which relief can be granted.

Accordingly, Plaintiffs' Complaint should be dismissed with prejudice.

## BACKGROUND

Defendant PIM manufactures, markets, and distributes Welch's® Fruit 'n Yogurt™ Snacks, which are yogurt-coated fruit snacks available in a variety of flavors—three of which are being challenged here: the Strawberry, Blueberry-Acai, and Mango Peach flavors. Compl. ¶¶ 2, 17–20. Plaintiff Morris is a New York resident who alleges she is a "regular consumer of the mango and strawberry varieties of *Fruit 'n Yogurt Snacks*, often purchasing boxes from Wegman's, Walmart and Big Lot" retail stores. *Id.* ¶ 48. Plaintiff Soto is an Illinois resident who alleges he "purchased them at various retail stores in Chicago on many occasions over the last few years." *Id.* ¶ 44.

The Products' packaging states the product name in large letters on the right side of the front label: Fruit 'n Yogurt™ Snacks. *Id.* ¶ 2. Next to vignettes of fruit and yogurt are images of

the fruit snack pieces themselves, surrounded by a hard yogurt coating, which are in the box's individual pouches. *Id.* The words "Made with Real Fruit Surrounded by Creamy Yogurt" are adjacent to the product image, with an arrow pointing from the words to the hard-coating image:



*Id.* As Plaintiff alleges, the Product is sold at various retailers, online, and in vending machines (*id.* ¶ 19)—i.e., the Product is not refrigerated. And nowhere does the packaging state that the Product is "healthy," nor do Plaintiffs identify marketing of the Product as "healthy."

Plaintiffs allege they purchased the Products "reasonably believing that Defendant's Product is made from yogurt (in some form)." *Id.* ¶¶ 45, 50. They allege the Products are mislabeled because they say that, to them, the Products "do not contain yogurt (in any form) and none of [their] ingredients are derived from yogurt at all" (*id.* ¶ 26)—even though the ingredients list discloses that the Product has a yogurt coating made up of yogurt powder:

Fruit Center (grape, pear, blueberry and acai), sugar, corn syrup, modified corn starch and/or rice flour, pectin, citric acid, sodium citrate, natural flavor, fruit and vegetable juice (color), spirulina extract (color), yogurt coating sugar, palm kernel oil, whey powder, nonfat milk powder, yogurt powder (cultured whey and nonfat milk), titanium dioxide, soy lecithin, vanilla, palm oil, coconut oil, carnauba wax, confectioner's glaze (lac-resin), tri-calcium phosphate, ascorbic acid (vitamin C), vitamin A palmitate, vitamin D3.

*Id.* ¶ 4. They then allege that PIM "misleadingly describes" the yogurt coating because Plaintiffs say that, "[w]hile a so-called 'yogurt powder' appears as a secondary ingredient of the 'yogurt

coating,'" they think "the 'yogurt powder' is not derived from yogurt as defined by federal regulations or as reasonable consumers understand the term 'yogurt' to mean." *Id.* ¶ 27.

Thus, claiming they "relied on Defendant's misrepresentations and omissions," Plaintiffs allege that had they "known that Defendant's *Fruit 'n Yogurt Snacks* are not made from yogurt (in any form), [they] would not have purchased Defendant's Product or, at the very least, would not have paid a price premium for Defendant's Fruit 'n Yogurt Snacks." *Id.* ¶¶ 10, 47, 52. Absent from the Complaint is the price paid for the Products; whether comparable alternative products include yogurt ("in some form"), as Plaintiffs allege is required; or how much they would have paid for comparable alternative products. Tellingly, Plaintiffs also fail to state whether, during their multiple purchases of the Products as supposed "regular" consumers, they ever reviewed the back label of the packaging, which contains extensive ingredient and nutrition information.

Due to the alleged deception, Plaintiffs seek monetary relief for themselves and a putative class. Compl. Prayer for Relief. Count I is filed on behalf of Plaintiff Soto and a putative Illinois class for a singular violation of the Illinois Consumer Fraud Act ("ICFA"). *Id.* ¶¶ 62–72. Counts II and III are on behalf of Plaintiff Morris and a putative New York class under the New York General Business Law ("NYGBL"), sections 349 and 350, respectively. *Id.* ¶¶ 73–91.

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. "To survive a motion to dismiss, plaintiff must 'state a claim to relief that is plausible on its face.'" *Wilson v. Jadamo Corp.*, 2023 WL 1451530, at *2 (N.D. Ill. Feb. 1, 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must allege "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. To have facial plausibility, a complaint must contain "factual content that allows the court to draw the reasonable

– 5 –

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To satisfy the "plausibility standard," a complaint must set forth allegations that allow the court to infer there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). This "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

## ARGUMENT

Plaintiffs' Complaint should be dismissed on three separate and independent grounds: because (1) Plaintiffs' claims are preempted by federal law, (2) PIM's conduct is protected by statutory safe harbors, and (3) Plaintiffs fail to plead a plausible claim on which relief can be granted.

## I.    Plaintiffs' Claims Are Preempted by Federal Law.

Both implied and express preemption preclude Plaintiffs' causes of action. Implied preemption comes in the form of either field preemption or conflict preemption. *See Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 984 (7th Cir. 2012) (quoting *Arizona v. United States*, 567 U.S. 387, 399–400 (2012)). Both iterations of implied preemption recognize the preeminence of federal authority, barring state laws and private actions that frustrate the regulatory scheme established by Congress. Express preemption "occurs when a federal statute explicitly states that it overrides state or local law." *Hoagland v. Town of Clear Lake*, 415 F.3d 693, 696 (7th Cir. 2005). The express-preemption doctrine recognizes that federal pronouncements displace conflicting state law and private actions brought under such laws. *Id.* As discussed below, both doctrines preclude Plaintiffs' claims here.

### A.    The Claims Are Impliedly Preempted.

To start, under the Supreme Court's decision in *Buckman*, Plaintiffs' claims are preempted because they are wholly dependent upon federal law. Plaintiffs surreptitiously try to enforce the FDCA, as "the existence of [] federal enactments is a critical element in their case." 531 U.S. at

353. But the FDCA states that "proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States." 21 U.S.C.S. § 337. *Buckman* thus holds that only the federal government may enforce the FDCA and that any state-law claim that depends on the existence of the FDCA is impliedly preempted by 21 U.S.C. § 337(a). 531 U.S. at 352–53. That should resolve this case.

Yet Plaintiffs rely on the FDA and its standards to complain, for example, that "none of the components of the so-called 'yogurt coating,' including the so-called 'yogurt powder,' contains or is derived from 'yogurt' . . . ***as yogurt is defined in the federal regulations***." Compl. ¶ 5 (emphasis added); *see id.* ¶ 27. They cite the FDA to complain that "completely absent from the 'yogurt coating'—including the ingredients of the 'yogurt powder'—are any live active yogurt cultures added to ***basic dairy ingredients*** (cream, milk, partially skimmed milk, skim milk or the reconstituted versions of those ingredients) to produce yogurt ***as that term is defined by federal regulations***." *Id.* ¶ 28 (emphasis added). The FDCA's definition of "optional dairy ingredients," such as whey, and "basic dairy ingredients," like milk, is also critical to their claims. *See id.* ¶ 29.

Plaintiffs admit that they are "suing for conduct that" they think "violates the FDA regulations." *Id.* ¶ 31. And each of their allegations depends on Plaintiffs' interpretation of the FDCA and FDA guidance: that PIM's product must be made with an ingredient "derived from yogurt" (86 Fed. Reg. at 31,124); that such yogurt ingredients must be cultured with live active cultures (21 C.F.R. § 131.200(a) and 86 Fed. Reg. at 31,122); and that certain "basic dairy ingredients" must be cultured along with certain "optional dairy ingredients" (21 C.F.R. § 131.200(a)).

Thus, Plaintiffs' claims are preempted because they improperly attempt to graft federal regulations onto state-law claims and enforce the FDCA, even though, under § 337, such authority lies exclusively with the United States. Courts in the Seventh Circuit and across the country have

consistently dismissed such attempts, explaining that "a private party cannot attempt to enforce the FDCA 'under the guise of state law claims,'" because "'[c]ourts have interpreted section 337(a) as prohibiting private rights of action under the FDCA and have dismissed state law claims that seek to enforce the FDCA or its regulations.'" *Regan v. Sioux Honey Ass'n Coop.*, 921 F. Supp. 2d 938, 945 (E.D. Wis. 2013) (first citing *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1166 (S.D. Cal. 2009), and citing *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 538 n.26 (S.D. Ohio 2011), and then citing *Parker v. Stryker Corp.*, 584 F. Supp. 2d 1298, 1301 (D. Colo. 2008)).

Anticipating this obstacle (because PIM raised it in the last case Plaintiff Morris filed), Plaintiffs filed this case hoping to, in their words, "avoid the potential preemption pitfall identified by Defendant." Doc. 20 at 3. Specifically, Plaintiffs try to artfully plead around their most glaring preemption defect by claiming that this case "is not preempted by federal law" because "Plaintiffs are suing for conduct that violates FDA regulations, but are not seeking to enforce those FDA regulations"; "[r]ather, Plaintiff Ramon Soto is suing Defendant for conduct which violates Illinois' Consumer Fraud Act, and Plaintiff Charlene Morris is suing Defendant for conduct which violates New York's General Business Law §§ 349 and 350." Compl. ¶ 31.

But the Supreme Court and the Seventh Circuit have refused to "elevate form over substance and allow parties to evade" preemption of other federal enactments "by relabeling their" federal-law claims as state-law claims. *See Gibson v. AT & T Techs., Inc.*, 782 F.2d 686, 688 (7th Cir. 1986) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). "Artful pleading will not suffice to avoid preemption" under federal law. *See Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1038 (6th Cir. 1989). Appellate courts reject such maneuvering and have consistently held that "plaintiffs may not merely rebrand a claim in order to avoid preemption." *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 398 n.8 (3d Cir. 2010) (courts must look at the "gravamen of the

plaintiffs' claim" (first citing *Oglesby v. Del. & Hudson Ry. Co.*, 180 F.3d 458, 461 (2d Cir. 1999) (rejecting a plaintiff's attempt to differentiate failure-to-warn cause of action from other product liability claims, calling it "a distinction without a difference"); and then citing *Law v. Gen. Motors Corp.*, 114 F.3d 908, 910 (9th Cir. 1997))). "In such a case, which raises the spectre of 'artful pleading,' the court must necessarily be guided by the substance rather than the form of the complaint." *Eitmann v. New Orleans Pub. Serv., Inc.*, 730 F.2d 359, 366 (5th Cir. 1984).

That is why, recently, courts have correctly dismissed cases as being preempted under the FDCA where plaintiffs tried to elevate substance over form to bring a state law claim using federal law. The decision in *Vanzant v. Hill's Pet Nutrition Inc.* is instructive. There, the court explained that, "[t]o avoid being impliedly preempted under *Buckman*" by bringing a claim under state law, "the conduct on which the claim is premised must be the type of conduct that would traditionally give rise to liability under state law—and that would give rise to liability under state law even if the FDCA had never been enacted." 2025 WL 296062, at *6. That was not the case in *Vanzant*, and it is not the case here. Here, without the FDA's definitions under the FDCA's regulations, there would be no standard of identity for "standardized yogurt" from which Plaintiffs could claim PIM's "yogurt-coating" and "yogurt powder" depart. *See* Compl. ¶ 32; 86 Fed. Reg. at 31,124. So even if the ICFA and the NYGBL were laws that provide remedies for false or misleading advertising and unfair or deceptive business practices, this is not a case under the state's traditional police power because Plaintiffs fail to distinguish the alleged deception from federal regulations or plead claims independent of the FDCA. The state laws "do[] not change the fact that Plaintiffs would have no claim under" the state laws for which they are suing "if the FDCA were never enacted." *Vanzant*, 2025 WL 296062, at *7; *see also id.* at *6 (if "the plaintiff is effectively suing for a violation of the FDCA (no matter how the plaintiff labels the claim)," then "the plaintiff's claim is thus impliedly

preempted under *Buckman*") (citation omitted); *Vincent v. Medtronic, Inc.*, 221 F. Supp. 3d 1005, 1011 (N.D. Ill. 2016) ("To the extent that [plaintiff] brings claims based solely on [defendant's] noncompliance with [FDA] procedures, those claims are impliedly preempted.").

It is the sole province of the FDA to enforce the FDCA and its regulations, so this Court need not wade into the deeply nuanced interplay between the FDA's regulations and guidance for yogurt and yogurt-coated products. Without the FDA's guidance, there would be no alleged duty to disclose the presence of "any live active yogurt cultures" or to trace the yogurt coating's underlying ingredients to standardized yogurt. *See* Compl. ¶¶ 28–30, 71. Because those are federal regulatory constructs, the state-law claims are impliedly preempted.

### B.    The Claims Are Expressly Preempted.

Relatedly, Plaintiffs' claims are preempted because the FDCA expressly preempts state laws that impose any requirement "for a food which is the subject of a standard of identity established [by the Act]," "for the labeling of food of the type required by [the Act]," or "for nutrition labeling of food" "that is not identical to the requirement" of the Act. 21 U.S.C.S. § 343-1. "The plain language of [these sections] does not reveal any intent on the part of Congress to permit private plaintiffs to sue for damages resulting from violations of the [Act]. If anything, it manifests the opposite: an intent to keep enforcement of the FDCA in government hands." *Duke v. Am. Med. Sys., Inc.*, 1995 WL 505472, at *2 (N.D. Ill. Aug. 18, 1995). Thus, this case should also be dismissed because Plaintiffs incorrectly claim that PIM's "conduct [] violates FDA regulations" (Compl. ¶ 31), when PIM's practices are wholly consistent with the FDCA, which bars relief.

### 1.    PIM does not violate the FDCA by using "yogurt" on the Products.

Start with Plaintiffs' misguided theory that PIM misleads consumers by using "yogurt" as part of the Products' name. Plaintiffs acknowledge, "In order to avoid misleading consumers, the FDA has cautioned that, when the term 'yogurt' is used as part of a product name (as it is with

Fruit 'n Yogurt Snacks), it 'expects that yogurt, or a substance derived from yogurt (i.e., yogurt powder) is used as an ingredient in their manufacture. ***The ingredient must be or be derived from yogurt that complies with § 131.200.***'" Compl. ¶ 30 (emphasizing 86 Fed. Reg. at 31,124).

PIM unambiguously discloses in the Product's ingredients list, as the FDA requires, that the Products have a "yogurt coating" made up of "yogurt powder." As Plaintiffs note, the "'***yogurt coating***' is made from sugar, palm kernel oil, whey powder, nonfat milk powder, ***yogurt powder (cultured whey and nonfat milk)***, titanium dioxide, soy lecithin, vanilla, palm oil, coconut oil, carnauba wax, confectioner's glaze (lac-resin), tri-calcium phosphate, ascorbic acid (Vitamin C), Vitamin A palmitate, and Vitamin D3." *Id.* ¶ 4 (emphases added).

But this is only half the story. Indeed, the FDA put a lot of thought into how to classify products like these yogurt-coated fruit snacks. In doing so, it explained that such snacks "are not subject to the[] requirements" for the standard of identity for yogurt because "[i]n our experience, products" that are "yogurt-coated . . . are not represented as and do not purport to be yogurt." 86 Fed. Reg. at 31,124. Since the Products are fruit snacks (not yogurt), the FDA explained that it only "generally expect[s] . . . ***a substance derived from yogurt (i.e., yogurt powder***) is used as an ingredient in their manufacture." *Id.* (emphasis added). When a product includes an ingredient like yogurt powder, the FDA simply requires that the "ingredient [] be declared by its common or usual name in the ingredient statement on the product label in accordance with section 403(i)(2) of the FD&C Act, and § 101.4(a) and (b)." *Id.* And those requirements only require, as relevant here, "declaring the established common or usual name of the ingredient followed by a parenthetical listing of all ingredients contained therein." 21 C.F.R. § 101.4(b)(2)(i). That is it.

PIM does exactly what the FDA requires. To ensure consumers are not misled, the FDA requires the yogurt coating and yogurt powder to be disclosed on the ingredients panel and

"declared by its common or usual name[.]" *Id.* PIM does that as well. The Complaint itself points out that the ingredients list identifies "yogurt coating" that is made up of, among other ingredients, "yogurt powder (cultured whey and nonfat milk)." Compl. ¶ 4. Indeed, PIM obtained yogurt powder, made sure it was manufactured in accordance with § 131.200, and then combined it with other ingredients to produce a fruit snack product. This is all that is necessary to comply with the law.

Plaintiffs fail to allege a single fact otherwise—let alone demonstrate an FDA violation. All they do is complain that the yogurt powder in PIM's product "is not derived from yogurt as defined by federal regulations," even though "the 'yogurt powder' is made from a blend of 'cultured whey and nonfat milk'" (*id.* ¶ 27) because, to them, the "skim milk of the so-called 'yogurt powder' [is not] cultured by the addition of the prescribed lactic-acid producing bacteria" (*id.* ¶ 28). The *only* support for this theory comes from Plaintiffs' own unfounded preferences. It turns on their interpretation of "yogurt powder (cultured whey and nonfat milk)" on PIM's label to mean that the whey in the mixture is cultured but that the nonfat milk is not, because PIM fails to phrase its ingredients as Plaintiffs would prefer (i.e., "Nonfat Dry Milk, Live Culture," or "Dry Nonfat Yogurt (Cultured Skim Milk)"). *See id.* ¶¶ 32–33. From this, they apparently have concluded that only the whey is cultured in the Products (separately) and the Products are therefore noncompliant. *See id.* ¶ 29 (the "'yogurt powder' contains <u>cultured</u> whey, which the FDA does not permit as an 'optional dairy ingredient'"). They are demonstrably wrong.

This case is preempted because Plaintiffs' theory turns on their disclosure preferences that are not required by the FDA, and a tortured reading of the actual disclosures. They point to *nothing* in the FDCA or from the FDA prohibiting PIM from saying "yogurt powder (cultured whey and nonfat milk)" on the ingredients panel. Nor can they; the FDA's regulations require PIM to describe its yogurt powder exactly as it is described, which means "declaring the established common or

usual name of the ingredient followed by a parenthetical listing of all ingredients contained therein." 21 C.F.R. § 101.4(b)(2)(i). The regulations note that "[s]kim milk, concentrated skim milk, reconstituted skim milk, and nonfat dry milk may be declared as 'skim milk' or 'nonfat milk'" (*id.* § 101.4(b)(3)), which PIM does. The regulations note that "[w]hey, concentrated whey, reconstituted whey, and dried whey may be declared as 'whey'" (*id.* § 101.4(b)(7)), again, which PIM does. And they note that "[b]acterial cultures may be declared by the word 'cultured' followed by the name of the substrate" (*id.* § 101.4(b)(5)), which, again, PIM does.

Thus, by arguing that the yogurt powder is impermissibly "made from a blend of 'cultured whey and nonfat milk'" and described as such (Compl. ¶ 28), Plaintiffs are at odds with the FDA, which permits a yogurt-derivative product to be made by using a blend of whey and nonfat milk that are cultured together. Indeed, to make yogurt, all the FDA requires is (1) the use of "milk," along with (2) "[o]ther safe and suitable milk-derived ingredients"—i.e., whey—and then (3) the "culturing" of those ingredients, which consists of combining the products "with a characterizing bacterial culture that contains the lactic acid-producing bacteria." 21 C.F.R. § 131.200(a)–(c). The FDA expressly requires "that the dairy ingredients be cultured together." 86 Fed. Reg. at 31,127. That is precisely how PIM's yogurt powder is described on the label, and even how an article cited in Plaintiff's Complaint recognizes that yogurt is made. *See* Megan Ware, *Everything you need to know about yogurt* (Jan. 22, 2024), *cited at* Compl. ¶ 27 n.9 ("Yogurt starts as a fresh milk or cream. It is often first pasteurized, then fermented with various live bacteria cultures.").

This conclusory assertion is based solely on Plaintiffs' reading of PIM's label. Plaintiffs bring this action because they read PIM's label statement "yogurt powder (cultured whey and nonfat milk)" to mean that the whey in the yogurt powder mixture is cultured but that the nonfat milk is not. PIM apparently fails to phrase its ingredients as Plaintiffs would prefer (i.e., "Nonfat Dry

Milk, Live Culture," or "Dry Nonfat Yogurt (Cultured Skim Milk)" (*see* Compl. ¶¶ 32–33)), but because Plaintiffs' semantic preferences are not required under settled law, they do not show that PIM violates the FDCA and do not push Plaintiffs' Complaint from implausible to plausible.

Indeed, this case is distinct from the single case where a court allowed a similar claim to proceed. In *McGarity v. Sun-Maid Growers of California*, the court rejected the defendants' preemption defense. *See* --- F. Supp. 3d ----, 2025 WL 2146857, at *1 (S.D. Cal. July 29, 2025). There, the court accepted as plausible the plaintiff's interpretation that the nonfat milk used in the defendant's yogurt powder was not cultured based on a footnote where the defendant allegedly *admitted* that the nonfat milk in its formulation is not cultured. *Id.* at *2. That is not the case here. And, of note, before that alleged concession from the defendant in *McGarity*, the court there found that the plaintiff's claims were preempted based on the plaintiff's theory that the yogurt coating "does not contain the live cultures or bacteria." 2024 WL 4370578, at *4 (S.D. Cal. Oct. 1, 2024).

In sum, the entire foundation of Plaintiffs' Complaint is that they disagree with PIM's description of the yogurt powder in compliance with the FDCA so their claims are preempted because they are trying to impose requirements that are not *identical* to those under the FDCA. "'Identical' is the key word." *Slowinski*, 744 F. Supp. 3d at 882. Plaintiffs "can't impose additional obligations," even if the preferred description of yogurt powder "that the plaintiff wants added would be consistent with the requirements imposed by the [FDCA]," because "consistency is not the test; identity is." *Id.* (quoting *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011)). When, as here, the FDA "lists labeling disclosures that are affirmatively required, state law may not tack on further required disclosures that the federal standard does not mention." *Id.* (quoting *Bell v. Pub. Super Mkts. Inc.*, 982 F.3d 468, 484 (7th Cir. 2020)). This "prevents chaos" and "ensure[s] a nationally

– 14 –

uniform regulatory system, rather than a fifty-state patchwork." *Id.* (quoting *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 625 (4th Cir. 2015)).

The FDA requires manufacturers to describe yogurt powder with its "common or usual name," "followed by a parenthetical listing of all ingredients contained therein." 21 C.F.R. § 101.4(b)(2)(i). PIM does that. Plaintiffs can feel that the ingredients need to be listed differently and can petition the FDA to make that change, but "Plaintiffs cannot use state law to tack on additional requirements" because when, as here, a product complies with the FDA's guidance, "a plaintiff can't use state law to tack on additional requirements." *Slowinski*, 744 F. Supp. 3d at 883–84.

### 2. PIM does not need to list "live active cultures" in the ingredients list.

The same result should follow with Plaintiffs' omission-based theory claiming that the Products violate the law because the yogurt coating does not list "any live active yogurt cultures." Compl. ¶ 28. The FDA has declined to find that "yogurt should necessarily contain live and active cultures" (86 Fed. Reg. at 31,123) and, instead, "permits the *optional* labeling statement 'contains live and active cultures' or similar statement if the yogurt contains specified amounts of live and active cultures." *id.* at 31,118. Thus, this claim is preempted because "the FDCA preempt[s] the plaintiffs' attempt to use state law to require that disclosure language be added to a food label when federal regulations did not explicitly require it." *Bell*, 982 F.3d at 484; *see also Novotney v. Walgreen Co.*, 683 F. Supp. 3d 785, 792 (N.D. Ill. 2023) (the FDCA's labeling requirements are "a matter of federal law, and by claiming that some other terminology is necessary to ensure that the label is not misleading, plaintiff impermissibly claims that state law imposes requirements that are different from, additional to, or otherwise not identical with, the requirements of the FDCA").

The FDA has given its express view on this exact issue, and the FDA's interpretation here should control. In *Auer v. Robbins*, the Supreme Court held that an agency's interpretation of its own regulation is entitled deference. *See* 519 U.S. 452, 461 (1997). And "[i]n *Kisor v. Wilkie*, [588

U.S. 558] (2019), the Supreme Court reaffirmed its holding in *Auer v. Robbins*, 519 U.S. 452 (1997), that such deference is appropriate." *Garcia v. Garland*, 64 F.4th 62, 71 (2d Cir. 2023).[1] In *Kisor*, the Supreme Court explained that a "reasonable agency reading of a genuinely ambiguous rule" or regulation "should receive *Auer* deference" so long as "the character and context of the agency interpretation entitles it to controlling weight." 588 U.S. at 576.

*Auer* deference is appropriate. First, the regulation in question is "genuinely ambiguous." *Kisor*, 588 U.S. at 574 (citations omitted). After the FDA's amendment in 2021, the language of the FDA's standard of identity for yogurt was ambiguous as to whether nonstandardized foods that do not meet the standard of identity for yogurt could use the descriptive term "yogurt" as part of the food's name on the label. *See* 21 C.F.R. § 131.200. Second, the FDA's reading of the regulation is "reasonable." *Kisor*, 588 U.S. at 575 (citations omitted). The FDA found that foods that do not purport to be, or are not represented as, yogurt (e.g., fruit snacks) are not subject to yogurt's standard of identity and the yogurt used need only be derived from yogurt and declared as such in accordance with the FDCA. *See* 86 Fed. Reg. at 31,124. Finally, "the character and context of the agency interpretation entitles it to controlling weight" because, in responding to comments, the agency advanced an interpretation that was "actually made by the agency" as "the agency's 'authoritative' or 'official position,'" in a reading that "implicate[d the FDA's] substantive expertise" and "re-flect[ed] 'fair and considered' judgment[.]" *Kisor*, 588 U.S. at 576–79 (citations omitted). Courts consistently defer to agency interpretations in the agency's responses to public comments. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 613 (2011) ("The FDA's views are 'controlling unless

---

[1] The decision in *Loper Bright Enterprises v. Raimondo*—in which the Supreme Court overruled *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* and deference to an agency interpretation of an ambiguous **federal statute**—did not overrule *Kisor*, which reaffirmed deference to an agency interpretation of an ambiguous **federal regulation**. *See* 603 U.S. 369, 412–13 (2024) (overruling 467 U.S. 837 (1984)).

plainly erroneous or inconsistent with the regulation[s]' or there is any other reason to doubt that they reflect the FDA's fair and considered judgment.") (citation omitted).

Thus, the FDA's explanation of the yogurt standard of identity provides the agency's interpretation of the regulation for yogurt covered nonstandardized foods—to which this Court should defer. Because the FDA has said that the "live and active" cultures labeling is optional, Plaintiffs have failed to allege a violation of the FDA's regulations. The Seventh Circuit's decision in *Turek v. General Mills, Inc.* is illustrative on this point. *See* 662 F.3d at 427. The plaintiff in *Turek* argued that the labeling of Fiber Plus bars was misleading for omitting that the fiber was from "inulin extracted from chicory root," which allegedly was an inferior form of fiber that could harm some people. *Id.* at 425–26. The Seventh Circuit concluded that the Fiber Plus bars were compliant with FDA regulations for the labeling of fiber, which did not require the disclosure of inulin or its health effects. *Id.* at 427. Because "[t]he disclaimers that the plaintiff want[ed] added to the labeling of the defendants' inulin-containing chewy bars [we]re not identical to the labeling requirements imposed on such products by federal law, . . . they [we]re barred." *Id.* Again, "the FDCA preempt[s] the plaintiffs' attempt to use state law to require that disclosure language be *added* to a food label when federal regulations did not explicitly require it." *Bell*, 982 F.3d at 484.

In the end, Plaintiffs' omission-based claims rest on allegations that directly contradict what the FDA requires, so their attempt to impose conflicting standards is preempted. *See Franco v. Chobani, LLC*, 789 F. Supp. 3d 584, 606 (N.D. Ill. 2025) (finding that a sweeping proposed class action against a yogurt manufacturer was "expressly preempted by federal law" because the FDA "explicitly *authorize*[*d*] [the manufacturer's challenged labeling] statements" and a "state law claim is preempted if it seeks to impose a new labeling requirement" (citing *Bell*, 982 F.3d at 484)); *Barnes v. Unilever United States Inc.*, 2023 WL 2456385, at *8 (N.D. Ill. Mar. 1l, 2023) ("In this

case, to the extent Barnes's deceptive practices claims are based on the alleged omission of benzene from Unilever's products' labels, the claims effectively seek to add the disclosure of benzene on the products' labels where federal regulations do not explicitly require it.").

## II. PIM's Conduct Is Protected by Illinois's and New York's Safe-Harbor Provisions.

Plaintiffs' Illinois and New York claims independently fail because the ICFA and NYGBL provide safe harbors for instances when defendants' conduct complies with federal law, as here.

### A. The ICFA Bars Plaintiffs' Claims.

Illinois has a statutory safe harbor for conduct "specifically authorized" by "any regulatory body or officer acting under statutory authority of this State or the United States." 815 Ill. Comp. Stat. § 505/10b(1). When, as here, the FDA authorizes the challenged labeling and does not require the additional disclosures Plaintiffs seek, ICFA claims are barred. *See Turek*, 662 F.3d at 427 (applying safe harbor where "[t]he representations on the packaging of the defendants' chewy bars concerning dietary fiber [we]re specifically authorized by the federal statutes and regulations"). Since PIM is "doing something specifically authorized by federal law," the safe harbor shields it from liability. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 941 (7th Cir. 2001). Because the FDA authorized the labeling PIM uses, the ICFA's safe harbor forecloses the Illinois claims.

### B. The NYGBL Also Bars Plaintiffs' Claims.

New York law also bars claims that seek to sanction activity authorized by federal regulations. Both NYGBL provisions Plaintiffs invoke provide a "complete defense" if the allegedly deceptive practice is challenged by a plaintiff and "is subject to and complies with the rules and regulations of, and the statutes administered by[,] [a federal agency]." *See* NYGBL §§ 349(d), 350(c); *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 465 (S.D.N.Y. 2019) ("The safe harbor provides a complete defense that the act or practice at issue is subject to and complies with

federal rules and regulations, meaning compliance with [federal law] would preclude Plaintiff's claims under §§ 349 and 350"); *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 134 n.6 (E.D.N.Y. 2018) (finding that dismissal of NYGBL claims was appropriate because defendants' food labels "did not violate FDA standards" and § 350(c) applies broadly to agency regulations); *Wurtzburger v. Ky. Fried Chicken*, 2017 WL 6416296, at *5 (S.D.N.Y. Dec. 13, 2017). Because Plaintiffs do not plausibly allege PIM failed to comply with FDA regulations, New York's safe-harbor provisions provide PIM with a complete defense to the New York claims.

## III. Plaintiffs' Consumer Protection Claims Are Inadequately Pleaded and Implausible.

The Court could also dismiss this case because it fails to state a claim upon which relief may be granted. Both the ICFA and the NYGBL apply a reasonable consumer standard. Under the reasonable consumer standard, "[w]hat matters most is how real consumers understand and react to the advertising." *Bell*, 982 F.3d at 476. Yet Plaintiffs' Complaint only offers fanciful interpretations of PIM's label, which always warrants dismissal. *Id.* at 493 ("It's well settled that a label is not deceptive as a matter of law when the plaintiff's interpretation is so facially illogical, implausible, or fanciful that no reasonable consumer would think it[.]"). Plaintiffs fail the reasonable consumer test since they do not plausibly allege that reasonable consumers would be deceived.

### A. Plaintiffs Fail to Allege What a Reasonable Consumer Believes.

Here, the Complaint is premised on the notion that the Product falsely suggests that they "contain[] or [are] derived from 'yogurt' either as yogurt is defined in the federal regulations or *as consumers commonly understand the term*." Compl. ¶ 5 (emphasis added). But beyond discussing Plaintiffs' incorrect beliefs about federal regulations, not once do Plaintiffs ever explain how "consumers commonly understand" the term "yogurt." Instead, in five different instances, Plaintiffs just repeat the same rote, conclusory statement that there is confusion based on what "reasonable consumers understand the term 'yogurt' to mean" (*id.* ¶¶ 5, 27, 28, 30, 34) without ever once

– 19 –

explaining what they—let alone reasonable consumers—understand the term "yogurt" to mean. They just claim *everyone* must be deceived by the word "yogurt" because the images of yogurt on the Products' packaging "provide the illusion of health while delivering the harms of an ultra-processed food." *Id.* ¶ 1. This is completely contrary to reason and applicable law.

This Court need not accept Plaintiffs' conclusory statements that reasonable consumers would see a picture of yogurt and read the entire packaging to imply that the unrefrigerated *fruit snack* in a cardboard box has dripping-wet, fresh yogurt. *Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 762 (N.D. Ill. 2022) ("On a motion to dismiss, the Court need not accept the conclusion that a reasonable consumer would read the Product's 'chocolate' labeling to imply that the chocolate would be made mostly or entirely of cacao bean ingredients."); *Wach v. Prairie Farms Dairy, Inc.*, 2022 WL 1591715, at *3 (N.D. Ill. May 19, 2022) ("[Plaintiff's] allegations about consumer expectations—i.e. that a reasonable consumer would expect a product labeled 'Premium Vanilla Ice Cream' to contain a non-negligible amount of extracts from vanilla beans or to include real vanilla flavoring—are conclusory statements I need not accept." (citing *Iqbal*, 556 U.S. at 678)); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 162 (S.D.N.Y. 2021).

And this Court certainly need not accept the conclusory allegation that reasonable consumers are led to believe that the fruit snacks are "healthy" when there is no such indication on the packaging. In this regard, "the complaint fails because it is attempting to put words into the manufacturer's mouth. Consumers cannot impose content that isn't there[] and impute meaning that is not fairly derived from the labeling itself. That's another way of saying that an interpretation of the packaging must be reasonable—the focus is on the interpretation by a reasonable consumer." *Matthews v. Polar Corp.*, 2023 WL 4534543, at *9 (N.D. Ill. Mar. 22, 2023). Indeed, courts routinely dismiss cases "based on a legally unreasonable interpretation of a product label" that did not

say or imply what the plaintiff claimed, because "[a] plaintiff cannot sue based on every fanciful idea that springs to mind after reading the label." *Sorkin v. Kroger Co.*, 2024 WL 3673719, at *5 (N.D. Ill. Aug. 6, 2024) (citation omitted). The same result should follow here. *Wach*, 2022 WL 1591715, at *3 (dismissing case about supposed deception regarding vanilla because the product "nowhere displays the words 'vanilla bean' or 'vanilla extract,' much less any statements conveying that the Product is 'made with vanilla beans' or 'made with vanilla extract'"); *Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775, at *3 (S.D.N.Y. Oct. 27, 2020) ("[T]he label on Defendant's protein drink does not state that it is 'made with vanilla extract' or even contain the words 'vanilla extract.'"). Plaintiffs only allege their own understanding of the Product, but "the Court [need] not simply accept conclusory statements asserting that the reasonable consumer agrees." *Lederman v. Hershey Co.*, 2022 WL 3573034, at *4 (N.D. Ill. Aug. 19, 2022).

### B.    PIM's Label Is Not Misleading.

Any way the Court looks at it, taking the allegations of the Complaint as true, Plaintiffs fail to satisfy the plausibility standard under the reasonable consumer test here.

Start with "the language of the label that Plaintiffs found so confounding" (*Slowinski*, 744 F. Supp. 3d at 880)—the ingredients list explains that the "yogurt powder" is composed of "cultured whey and nonfat milk." Compl. ¶ 4. "Strictly speaking, that phrase could mean a few different things, especially in the hands of someone with creative energy and too much free time on their hands." *Slowinski*, 744 F. Supp. 3d at 880. Plaintiffs think a reasonable consumer would read the package to mean that the adjective "cultured" only modifies "whey" but not "nonfat milk." Compl. ¶ 29. But under the reasonable consumer standard, courts in this district apply "generally accepted rules of syntax" and expect the same from the reasonable consumer. *FTC v. Credit Bureau Ctr., LLC*, 325 F. Supp. 3d 852, 864 (N.D. Ill. 2018) (applying "generally accepted rules of syntax" to find that "an initial modifier applies to each noun or phrase in a conjunctive series" and finding

– 21 –

that "[a]ny reasonable consumer would read" the phrase "free credit score and report" to have "'free' as modifying both 'credit score' and 'report,' no matter the color of the text or its formatting"). Thus, applying these principles here, which is the commons sense approach in this Circuit,[2] a reasonable consumer would—and is legally expected to—understand that "cultured" applies to both the "whey" and the "nonfat milk" in the conjunctive phrase "cultured whey and nonfat milk." The Court can thus find that reasonable consumers would not be misled by PIM's label.

Here, however, the Court need not even apply generally accepted rules of syntax to determine how reasonable consumers would interpret discrete FDA regulations buried in the Federal Register, because that "discussion seems like an exercise that only a lawyer or a linguist could enjoy" and "[m]ost consumers aren't going to be stumped by the phrase" "yogurt powder." *Slowinski*, 744 F. Supp. 3d at 881. Indeed, the "complaint certainly doesn't say so." *Id.* at 885. Instead, Plaintiffs cherry-pick FDA guidance to claim that the Products' yogurt coating is deceptive to a reasonable consumer—but they allege nothing to support the theory, which is *contradicted* by the FDA itself. Indeed, they ignore the FDA's express guidance that, based on its "experience" protecting consumers, the FDA expects that products that are "yogurt-coated . . . are not represented as and do not purport to be yogurt" (86 Fed. Reg. at 31,124), which is the exact opposite of what Plaintiffs are alleging. Thus, in reality, the "likelihood of a reasonable consumer getting stumped is smaller than the size of a piece of microplastic." *Slowinski*, 744 F. Supp. 3d at 881. This

---

[2] If there is any doubt, the Seventh Circuit has outlined how language should be read, explaining that the "interpretive rule, known as the series qualifier canon, generally provides the most natural reading of a sentence." *Phila. Indem. Ins. Co. v. Bellin Mem'l Hosp.*, 126 F.4th 532, 540 (7th Cir. 2025). Under the series qualifier canon, "[g]rammar rules dictate that when 'a straightforward, parallel construction that involves all nouns or verbs in a series' is preceded by a modifier, that modifier 'normally applies to the entire series.'" *Id.* (finding that the adjective "negligent" in the phrase "negligent act, error, or omission" modified each of "act," "error," and "omission" and not just "act"). Thus, the proper interpretation of the phrase "yogurt powder (cultured whey and nonfat milk)" requires the conclusion that "cultured" modifies both "whey" and "nonfat milk"—meaning the phrase denotes that both the whey and the nonfat milk are cultured. Any interpretation that "cultured" only modifies "whey" implausibly contradicts settled Circuit practice.

is because, as discussed, the FDA expressly allows the yogurt powder to be included in these products and expects the products will not be viewed as yogurt, "[s]o it is hard to believe that a reasonable consumer would think" otherwise. *Id.* at 886.

Even beyond what the FDA has said on this subject, Plaintiffs offer no plausible allegations that ordinary consumers of unrefrigerated, shelf-stable fruit snacks expect the coating to contain live, active yogurt cultures, or to mirror the composition and microbiology of refrigerated standardized yogurt. Plaintiffs cite an article from Harvard's School of Health to allege that "[y]ogurt is widely understood to be a healthy and nutritious product containing calcium, protein, phosphorus and B Vitamins, as well as bacteria that is beneficial to the gut biome." Compl. ¶ 3 & n.1. They also cite articles from scientific journals in which experts analyze yogurt. *See id.* ¶¶ 2–13. But Plaintiffs utterly fail to tie any of these articles from Harvard and scientific journals to the beliefs of *reasonable consumers*. Reasonable, everyday consumers do not peruse Harvard's public health website. And irrespective of whether "experts agree" with Plaintiffs' allegations, Plaintiffs fail to show that "the average consumer" shares Plaintiffs' understanding of the Products. *See Reinitz v. Kellogg Sales Co.*, 2022 WL 1813891, at *3 (C.D. Ill. June 2, 2022) (finding no support for reasonable consumer beliefs, "[w]hether or not experts agree"). In sum, Plaintiffs' "citations to a variety of 'experts' do not demonstrate" that there is any deception or plausible liability. *Lederman v. Hershey Co.*, 2022 WL 3573034, at *4 (N.D. Ill. Aug. 19, 2022).

At bottom, courts must "take into account all the information available to consumers and the context in which that information is provided and used," yet Plaintiffs do not. *Bell*, 982 F.3d at 477. Neither Plaintiff alleges they looked at—let alone relied on—the ingredient list of the Products. So there is no allegation that a reasonable consumer would read the label and be deceived, since "[t]hose interested in the actual ingredients can read the [ingredients] list." *Wach*, 2022 WL

– 23 –

1591715, at *3 (quoting *Steele v. Wegmans Food Mkts. Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020)). Courts regularly dismiss these claims on this basis. *See Hauger v. Dollar Gen. Corp.*, 2022 WL 2532487, at *4 (C.D. Ill. July 7, 2022) ("[A] consumer could read the ingredient list to learn what other ingredients are contained within the crackers if they were so concerned with the amount of graham flour or honey in the product, as Plaintiff contends."). Consider *Sneed v. Ferrero U.S.A., Inc.*, where the plaintiff claimed that a candy's "sweet cream" label was misleading because the cream was "made out of vegetable oils, skim milk powder, and whey proteins." 656 F. Supp. 3d 777, 782 (N.D. Ill. 2023). The court observed that while "[a]n accurate ingredient list does not immunize a defendant from a deceptive front label," it is "relevant to determining whether reasonable consumers would be misled." *Id.* at 784 (quoting *Bell*, 982 F.3d at 477). The court dismissed the plaintiff's ICFA claims because the ingredient list did not indicate that the candy "is a dairy product with at least 18% milkfat," as defined by FDA and several dictionary definitions. *Id.* at 782, 784. The court required "[s]omething more than dictionary definitions [] to be pled to show that it is plausible that a reasonable consumer would be deceived by the word 'cream.'" *Id.* at 784. The same should happen here.

## C. Plaintiffs Fail to Allege a Viable Injury.

Plaintiffs also fail to plead an actual injury under the ICFA and the NYGBL. Plaintiffs allege they paid a "price premium" and "would have paid less" or "would not have purchased [the Products] at all" but for PIM's representations. Compl. ¶ 42. But such "highly generic allegations are insufficient. Plaintiff[s'] complaint that '[they] expected to receive something more than what [they] got, in and of itself, does not constitute actual damages.'" *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 743 (N.D. Ill. 2019); *see also Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 310 (S.D.N.Y. 2021) ("Under New York law, a plaintiff's allegation that he or she bought a product that he or she 'would not have purchased, absent a manufacturer's deceptive commercial practices' is

insufficient to establish a cognizable injury under NYGBL §§ 349 and 350."); *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012) (dismissing claims where plaintiffs' alleged injury was "identical to the deception"). In *Camasta v. Jos. A. Bank Clothiers, Inc.*, the Seventh Circuit concluded that a plaintiff's allegations about damages fell short because he failed to support his claim "that he paid more than the actual value of the merchandise he received." 761 F.3d 732, 739 (7th Cir. 2014). Same here. "Plaintiffs' barebones assertion that they didn't get the benefit of the bargain is not enough." *Slowinski*, 744 F. Supp. 3d at 887. They fail to show that they suffered "any observable economic consequences" from purchasing these fruit snacks. *See Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008) (dismissing claim about lead in lipstick because plaintiff "d[id] not allege that she would not have purchased lipstick, that she would have purchased cheaper lipstick, or that the lipstick in question had a diminished value because of the lead"). Thus, they fail to adequately plead injury as well.

## CONCLUSION

For the above reasons, the Court should dismiss Plaintiffs' claims with prejudice.


Dated: November 19, 2025                         Respectfully submitted,
Chicago, Illinois

                                  By:    */s/ Sean H. Suber*

                                         Sean H. Suber
                                         Tyree Petty-Williams
                                         WINSTON & STRAWN LLP
                                         300 N. La Salle Dr.
                                         Suite 4400
                                         Chicago, IL 60654
                                         (312) 558-5600
                                         SSuber@winston.com
                                         TPettyWilliams@winston.com

Amanda L. Groves*
Katelyn Taira[+]
WINSTON & STRAWN LLP
333 S. Grand Ave.
38th Floor
Los Angeles, CA 90071-1543
(216) 615-1700
AGroves@winston.com
KTaira@winston.com

*Counsel for Defendant PIM Brands, Inc.*

*Admitted Pro Hac Vice
[+] Pro Hac Vice Forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of November, 2025, I caused the attached copy of the

foregoing to be served on the following persons by electronic case filing:

Elizabeth A. Fegan
Megan E. Shannon
**Fegan Scott LLC**
150 S. Wacker Dr.
24th Floor
Chicago, IL 60606
beth@feganscott.com
megan@feganscott.com
(312) 741-1019

*Attorney for Plaintiffs Charlene Morris and Ramon Soto*

/s/ *Sean H. Suber*

*Attorney for Defendant*